MILLER, Judge.
Defendant Department of Highways appeals the judgment awarding $404,004.43 to plaintiffs Joseph Mondello and his minor son for personal injuries to Mondello and for the wrongful death of his wife. We reverse.
This case was consolidated for trial and appeal with Wood v. State, through Department of Highways, 338 So.2d 739 (La.App. 3 Cir. 1976) in which a separate opinion is being handed down this date.
Joseph Mondello was driving in a southerly direction and Willie Lee Wood in a northerly direction; they were involved in *732 an “almost” headon collision which occurred about 9:45 p. m. on April 12, 1975. The accident occurred near the intersection of U. S. Highway 71-84 and Louisiana Highway 486 in Natchitoches Parish. As a result of the collision, Mondello’s wife was killed almost instantly, and Mondello and Wood suffered severe injuries. Following the accident, a pry bar had to be used to get into both vehicles.
About 7:00 p. m., the Mondellos left their young child in the care of the maternal grandparents and proceeded to a “housewarming party” at the newly constructed Walker residence located on La. 486. Being unfamiliar with the area, the Mondellos mistakenly turned off U. S. 71-84 onto the lower leg of La. 486 (called the Coulee Loop Road) and, after discovering their mistake, returned to U.S. 71-84 and traveled northerly about four miles to the intersection where this accident occurred some two hours later. They then turned 122° to the right onto La. 486 and found the Walker residence located some 1900' east of the intersection. They left the party about 9:40 p. m. with the intention of returning to pick up their son. Mondello drove his vehicle west on La. 486 toward the intersection of U.S. 71-84; he passed another westbound vehicle which departed the party about the same time he did. As Mondello approached the intersection, Willie Lee Wood was proceeding northerly on U.S. 71 — 84. The two vehicles collided almost headon some 80' south of the intersection; the Wood vehicle left 51' of skidmarks slanting from the direction of his lane to impact and the Mon-dello vehicle left no skidmarks prior to impact; impact occurred in the southbound lane of U.S. 71-84, causing the death of Susan Scott Mondello and pinning both Wood and Joseph Mondello behind the steering wheels of their respective vehicles.
La. 486 intersects U.S. 71-84 (the two U.S. arterial highways run together at this point) with an angle of 122° to a left turning motorist and 68° to a right turning motorist. Approaching the intersection from the east on La. 486, a driver is confronted first with a solid yellow line (no passing zone) which commences 500' from the intersection; secondly with a junction sign, well reflectorized, approximately 325' from the intersecting centerlines of the two highways; thirdly, there is a cattle guard approximately 130' from the centerline of the intersection; fourthly, there is a directional assembly sign some 70' from the centerline of the intersection indicating that U.S. 71-84 runs north and south; and finally 28' behind this sign, there is a stop sign located 42' from the centerline of the intersection.
See Detail Drawing A at page 733 to better understand the intersection and its approaches. See Detail Drawings B at page 734 for the location of gouge marks and debris together with a presentation of the likely route of the vehicles to and from the point of impact.

*733

*734

*735 The trial court based the decision on Mondello’s testimony and held the sole legal cause of the collision “was the obscuring obliteration and hiding of the stop sign facing La. 486 by a highway directional sign,” due to which obscuration Mondello could not see the stop sign in time to react and stop prior to getting into the intersection. Testimony at trial, as well as photographs, indicated the stop sign was indeed obscured at certain distances by the placement of the directional assembly sign, in violation of regulations in the Highway Department Manual for traffic devices. It was also established that Mondello was unfamiliar with La. 486 in this area, having traveled the 1900' stretch only one time and then earlier that evening when he was proceeding in the opposite direction looking for the Walker residence. The speed limit on La. 486 was posted at 55 m. p. h. at the time of the accident.
Testimony indicated visibility was clear on the night of the accident and that La. 486 is a straight road as it heads west from the Walker house to U.S. 71-84. There is one slight elevation in the road about half way from the Walker home to the intersection. Both La. 486 and U.S. 71 — 84 are hard surfaced, asphalt, two-lane highways.
NEGLIGENCE OF THE HIGHWAY DEPARTMENT
Although there is no evidence of pri- or accidents at this intersection, we find no manifest error in the trial court conclusion that the Department of Highways was negligent in erecting the stop sign and the highway directional assembly sign in such close proximity to each other as to partially obscure visibility of the stop sign to a driver approaching the intersection from the east. However, we find manifest error in the trial court’s factual conclusion that the Department’s negligence was a legal cause of the unfortunate collision between the Wood and Mondello vehicles.
The Department is not the guarantor of the safety of travelers or the insurer against all injuries which may result from highway defects. It is the duty of the Highway Department to see that the state’s highways are reasonably safe for persons exercising ordinary care and reasonable prudence. Pickens v. St Tammany Parish Police Jury, 323 So.2d 430 (La.1975); Wilkinson v. American Insurance Co. of Newark, N. J., 311 So.2d 584 (La.App. 3 Cir. 1975); Doucet v. State, Department of Highways, 309 So.2d 382 (La.App. 3 Cir. 1975); Dupre v. Louisiana Department of Highways, 154 So.2d 579 (La.App. 3 Cir. 1963). Liability does not attach unless the conduct complained of bears a causal connection in fact to the occurrence of the accident. Dixie Drive It Yourself System v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962); Stewart v. Gibson Products Co. of Natchitoches Parish La., Inc. 300 So.2d 870 (La.App. 3 Cir. 1974); Malone, Ruminations on Dixie Drive It Yourself versus American Beverage Company, 30 La.L.Rev. 363 (1970).
A review of this record, including numerous photographs and sketches of the accident, leads us to conclude that the Highway Department’s negligence in improperly placing signs at this intersection was not a cause in fact of the tragic accident. Had the collision occurred in the intersection and with the front of the Wood vehicle striking the left side of the Mondello vehicle, we could agree that the negligent placement of road signs was a cause in fact of the collision. Indeed, Mondello has based his case on the contention that impact occurred in the intersection, and suggests the gouge marks may not be related to the accident. Highway exhibits 15, 16 and 17 (excellent quality color photographs) conclusively establish that the gouge marks were made during this accident and that impact occurred 80' (and possibly more) south of the intersecting centerlines. A substantial amount of debris from the collision is shown in the area of and south of the fresh gouge marks.
The physical facts prove beyond peradventure that Mondello was proceeding slowly to negotiate the 122° left turn; he entered the favored road at a time when the intersection was preempted by the north *736 bound Wood vehicle. Without skidding he almost completed the 122° left turn onto U. S. 71-84 and impact occurred at least 80' south of the intersecting centerlines. The excellent color photographs by Deputy Ash-er Vandenburg were taken at the accident scene before the vehicles were moved. A view of the photographs makes it impossible to conclude that the accident occurred in the intersection.
The Mondello vehicle did not leave skid-marks prior to impact (Tr. 280). Although the Mondello vehicle was knocked backward 34' 8" from the gouge marks (Tr. 285), it came to rest south of the intersection. The Wood vehicle came to rest 16' north of the gouge marks. Highway exhibits 15, 16 and 17 conclusively establish that the fresh gouge marks and debris at and south of the gouge marks resulted from this accident. All experts agreed that a 122° left turn was possible at a speed of no more than 26 m. p. h. The fact that Mondello left no skid-marks prior to impact establishes his speed during his left turn was something less. Mondello’s version of the accident and the trial court’s decision were both linked to a finding that the accident occurred in the intersection and Mondello’s credibility on this crucial issue was totally destroyed by the physical facts.
NEGLIGENCE OF JOSEPH MONDELLO
The Mondellos left the housewarming party at the same time as another couple, the Holleys. The Mondello vehicle passed the Holley pickup truck shortly after leaving the yard of the Walker residence— Mr. Holley testified he was still shifting gears in his truck when Mondello passed him about one hundred yards west of the Walker residence, or 1600' from the intersection itself. Mondello testified that he accelerated to 50 m. p. h., and being unfamiliar with this stretch of road, saw the stop sign only when he reached the cattle guard. Mondello could remember nothing after that, except that the “road was turning to the left.” Tr. 182. Other testimony, Mondello’s survey plat and photographs corroborate Mondello in this respect, namely, that for westbound motorists the center line itself curves 2V20 to the left at the cattle guard.
On cross examination, Mondello admitted to seeing a junction sign for U.S. 71-84, as well as a directional assembly sign; however, he said he probably continued to proceed at 50 to 55 m. p. h. after seeing both junction signs and was unaware of any traffic on U.S. 71-84. He was first aware that he needed to stop when the stop sign “popped up from behind the white sign.” Tr. 204. At that point, it was too late to .react and apply his brakes.
Mr. Holley testified he saw no illumination from brake lights on the Mondello vehicle ahead of him. When Holley reached the intersection he had to look to his left to see the Wood and Mondello vehicles.
The gouge marks, skidmarks and debris found at the scene (Highway exhibits 15, 16 & 17), indicate the initial impact occurred 80' south (possibly further south) of the intersecting centerlines of the two highways. The physical evidence shows the Mondello vehicle did not leave skidmarks prior to impact; nevertheless it had almost completed the 122° left turn onto U.S. 71— 84 at the moment of impact. All experts agreed the 122° left turn would have been impossible on the intersection’s flat area at a speed approaching 50 m. p. h., which is well beyond the critical speed for such a turn in excess of 90°. If Mondello’s testimony is accepted as to his approximate speed on entering the intersection, the most probable result would have been that his automobile would have crossed U.S. 71-84 at the intersection. If it had, one of four things would have occurred; he would have: 1) made a “dog-leg” maneuver to his right onto the existing gravel road across U.S. 71-84; 2) negotiated a 68° right turn onto U.S. 71-84; 3) crashed into the ditch and fence straight ahead of him; or 4) been hit on the left side of his vehicle while still in the intersection.
In fact, the Mondello vehicle almost completed a 122° left turn and impacted almost headon with the Wood vehicle in the area of Mondello’s left front and side; the left *737 front wheel of the Mondello vehicle was knocked backward to a point under the normal position for the driver’s feet (Exhibit Highway 21). The photographs show that both vehicles came to rest, some distance south of the intersection. See Detail Drawings B.
The experts estimated the total force of the impact, measured by the extent of damage to both vehicles, at approximately 50 m. p. h. (that is, the damage was equal to that resulting from a vehicle traveling 50 m. p. h. into a stationary object).
The trial court based its decision on Mon-dello’s testimony that he did not slow for the intersection because he did not see the stop sign in time. The physical facts establish that Mondello did slow for the intersection and it is on the basis of these physical facts that we find manifest error in the finding that the accident occurred in the manner described by Mondello. There is no evidence indicating that Mondello was, or any other reasonable driver would be, unaware of the solid yellow line which commenced in the westbound lane some 500' east of the intersection; this no passing zone line warns the driver to be on the lookout for a curve, a hill, or an intersection immediately ahead. Based on the physical evidence, it is apparent that the solid yellow line and the two signs indicating that U.S. 71-84 was located ahead must have served their purpose and caused Mondello to decrease speed, knowing that he was approaching the intersection.
Based on the physical evidence, we conclude that Mondello knew he was approaching the intersection; that the approach was made at a slow speed; and that the sole legal cause of this accident was Mendello’s failure to look left to ascertain that the intersection was preempted by the favored oncoming Wood vehicle. The improperly obscured stop sign was no more related to this accident than it would have been had a motorist come to a full stop at the end of the properly marked yellow no passing zone, then recklessly proceeded into the intersection in the face of a favored northbound vehicle.
Mondello was negligent in failing to maintain a proper lookout. Fontenot v. Hudak, 153 So.2d 120 (La.App. 3 Cir. 1963). Since the physical facts establish Mondello slowed before entering the intersection, he was under a duty to exercise reasonable care in executing his 122° left turn onto the favored road. His failure to exercise such care was the legal cause, the cause in fact, of this collision. We need not consider the duty/risk analysis unless defendant’s conduct is a cause in fact of the harm. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972).
Finding that Mondello’s failure to maintain a proper lookout and take precautions of a reasonably prudent driver under the circumstances was the cause in fact of this collision, we do not confront the issue of whether Mondello was intoxicated. The evidence in this regard is in serious conflict; particularly troublesome are: 1) Mondello’s unconfirmed account (first mentioned several weeks after the accident) that someone at the accident scene gave him two or three good-sized swallows of alcohol to relieve his pain, and 2) the blood alcohol test reading of 0.196 which indicated intoxication. This reading was disputed and although admitted “subject to the objection,” we think it was rejected by the trial court. The method used for the test did not conform to officially approved methods under LSA-R.S. 32:663 (Rules and Regulations for the Louisiana Health and Human Resources Administration). More importantly, Mon-dello’s treating physician was of the opinion that the test did not represent a correct reading of his patient’s condition. The record leaves many questions unanswered on this issue; however, the testimony and exhibits lead us to conclude that the negligent driving of Mondello, and not the negligent placement of the highway signs at the intersection, was the sole legal cause of the collision.
The trial court judgment is reversed and set aside; judgment is rendered in favor of defendant Highway Department, and against plaintiff Mondello, dismissing all demands for the wrongful death of his wife *738 and for his personal injuries. All costs both at trial and on appeal are taxed to plaintiff Mondello.
REVERSED and RENDERED.
DOMENGEAUX, J., concurs in the result.
WATSON, J., concurs in part and dissents in part, and will assign written reasons.