HOOD, Judge.
This is a wrongful death action instituted by Mrs. Vera Mae Robinson, individually and as natural tutrix of her minor children, against Beauregard Parish Police Jury. Judgment was rendered by the trial court in favor of defendant, and plaintiff has appealed.
The determining issue presented is whether the accident which resulted in the death of plaintiff’s husband occurred on a public road or bridge which the defendant Police Jury was legally obligated to maintain and repair.
Plaintiff’s husband, Thomas Robinson, lost his life on December 20, 1971, when a large logging vehicle being operated by him overturned as it was being driven across a wooden bridge in a wooded area of Beauregard Parish. The vehicle fell upside down into the river or stream which was spanned by the bridge, and Robinson was drowned. There are no living eye witnesses to the accident.
The decedent was working as a tractor operator for Galloway and Sons, logging contractors, at that time. The vehicle which he was operating is known as a “Paek-a-back.” It was a relatively large and heavy machine, it being a type of vehicle which was used in the logging industry to pick up logs and haul them to designated points where they are loaded onto trucks. The machine was about nine feet wide and eleven feet high, and it was equipped with large rubber tires.
The decedent’s employer, Galloway, was engaged in cutting and hauling timber from a wooded, swampy, relatively uninhabited area, located west of a small river or stream which ran generally north and south. There were no roads of any kind on the west side of the river. There, however, was a wooden bridge which spanned the above river at a point near the place where Galloway was conducting his logging operations. The accident which resulted in Robinson’s death occurred on that bridge.
A blacktopped highway, running north and south, was located a little less than one mile east of the above bridge. An unpaved road, which was graded but otherwise was unimproved, ran from the blacktopped highway west to a point where a camp was located on a hill, about 100 to 150 yards east of the bridge. This unpaved road terminated at that camp. There was no road from the camp, or from the point where the above unpaved road terminated, to the bridge. In order for a vehicle to get from the camp to the bridge, it was necessary for it to travel downhill and around a curve, along an ungraded or unimproved trail. The evidence shows that no work had been done- on the trail leading from the camp to the bridge. It, in fact, would have been impossible for a grader to do road work between the end of the above described unpaved road and the bridge.
The bridge where the accident occurred, therefore, did not connect with any public road at all. There were no roads west of the bridge, and there was a space or distance of about 100 to 150 yards between the east end of the bridge and the nearest thoroughfare which might be considered to be a public road.
The bridge was constructed of wood some time prior to 1960, and since that time it has been used almost exclusively by cattlemen, by hunters and by persons engaged in *698 the logging industry. It is about 12 or 14 feet wide. When the bridge was built originally, the State Highway Department installed the pilings, stringers and caps, and the Beauregard Parish Police Jury placed the decking on the bridge. Since that time, the bridge has been repaired from time to time by cattlemen, hunters and loggers, and the Police Jury also has furnished some materials and labor in connection with the repair of that structure.
Plaintiff contends that the Police Jury has kept up, maintained or worked on the bridge for a period of three years prior to the date this accident occurred, and that the bridge thus had become a public road under the provisions of LSA-R.S. 48:491, the pertinent part of which reads:
“All roads or streets in this state that are opened, laid out or appointed by virtue of any act of the legislature or by virtue of an order of any parish governing authority in any parish, or any municipal governing authority in any municipality, or which have been or are hereafter kept up, maintained or worked for a period of three years by authority of any parish governing authority in its parish or by authority of any municipal governing authority in its municipality shall be public roads or streets as the case may be.” (Emphasis added).
The evidence tending to show the amount of work which had been done by the Police Jury on that bridge consists largely of the testimony of Wade Cooley, who has served as a police juror in Beauregard Parish since 1960. He stated that the bridge was built •originally for cattlemen, that stockmen, hunters and fishermen “volunteered their labor” in repairing the bridge, and that “every now and then” employees of the Police Jury would “put a few boards” on the decking of the bridge. He explained that the Police Jury performed work on the • bridge “off and on” at the request of cattlemen, who had to use it to get their cattle out of the swamp when the water got high, but that the Police Jury employees who did the work “had cattle back there too.” Cooley testified that on or about October 1, 1971, less than three months before the accident occurred, employees of the Police Jury replaced some of the decking on the bridge.
A part of the bridge collapsed at the time the accident occurred, and the damage was repaired shortly thereafter. Cooley testified that the Police Jury did no repair work on the bridge after the accident, that the men who were engaged in logging operations patched it up and finished their logging in that area, and that thereafter some cattlemen went in and reworked the bridge.
One witness who resided near the scene of the accident confirmed Cooley’s statement that some parish employees did some work on the decking of the bridge a few months before the accident occurred. Another witness, who hunts in that area and crosses the bridge frequently, testified that on one occasion when high water damaged the bridge he and other deer hunters repaired it. He stated that he has never seen anyone else working on the bridge despite the fact that he has hunted in that immediate area for a long time.
Neither the bridge nor the unpaved road which runs from the blacktopped highway to a point about 100 or 150 yards east of the bridge have ever been formally dedicated for public use, and there is nothing in the record to indicate that the Police Jury has ever taken any action relating to that road or bridge. The work which was done on the bridge by parish employees apparently was done solely under the direction of Cooley and not pursuant to any action of the Police Jury. Cooley testified that neither the bridge nor the unpaved road were in the parish road system.
The trial judge concluded that “this bridge was not a part of a public road as defined in R.S. 48:491 and the jurisprudence of the state.”
A road which has been kept up, maintained or worked for a period of three years by authority of a Police Jury in its parish may become a public road, even though there has been no formal dedication of it for public purposes. LSA-R.S. 48:491; *699 Police Jury, Parish of Catahoula v. Briggs, 291 So.2d 472 (La.App. 3 Cir. 1974); Winn Parish Police Jury v. Austin, 216 So.2d 166 (La.App. 2 Cir. 1968); Town of Sorrento v. Templet, 255 So.2d 246 (La.App. 1 Cir. 1971). In such a case the law infers that there has been an implied or a tacit dedication of a servitude of passage to the public. The rule is based on the principle that the landowner, through his words or conduct, has assented to the public use of the road or passageway. Town of Eunice v. Childs, 205 So.2d 897 (La.App. 3 Cir. 1967); Bomar v. City of Baton Rouge, 162 La. 342, 110 So. 497 (1926); Chargois v. St. Julien, 280 So.2d 847 (La.App. 3 Cir. 1973).
The law is settled, however, that the occasional “brushing up” or the “token maintenance” of a private road is not sufficient to establish an implied or a tacit dedication of that road for public use. Chargois v. St. Julien, supra; Martin v. Cheramie, 264 So.2d 285 (La.App. 4 Cir. 1972).
In Chargois v. St. Julien, supra, a dirt road running across private property was used by the public, and on a few occasions a parish road grader was used to grade it. We held that the maintenance work performed on that road was not sufficient to establish a tacit dedication of it to public use under LSA-R.S. 48:491. In that connection we said:
“The jurisprudence is settled to the effect that a mere ‘brushing up’ or token maintenance of a private road is not sufficient to establish a tacit dedication to public use of private properties so maintained. Martin v. Cheramie, 264 So.2d 285 (La.App. 4th Cir., 1972); Bordelon v. Heard, 33 So.2d 88 (La.App. 1st Cir., 1947).”
In Rowe v. Harvey, 307 So.2d 103 (La. App. 1 Cir. 1974), parish owned road graders were used to grade or to “clear out any rough spots,” on a private road if the equipment was in the area. The trial court found that the road had been maintained by the parish for three years and that that was sufficient to constitute a dedication under LSA-R.S. 48:491. The First Circuit Court of Appeal reversed, holding that “the mere occasional brushing of a pathway does not constitute working or maintenance within the meaning of the statute (LSA-R.S. 32:491).” The court said:
“Further, we do not believe that under the facts presented in this case, i. e., the minimal amount of work performed with parish equipment, justifies the invocation of the provisions of L.R.S. 48:491 when it is the clear intention of the governing authority and the abutting landowners that a dedication was not contemplated. While we can not condone the use of parish equipment on any non-public road, to hold this road as having been tacitly dedicated under the particular facts of this case would force upon the governing authority the future maintenance and upkeep of a road contrary to its wishes and that of the abutting property owners.”
In the instant suit the evidence shows that the defendant Police Jury put decking on the newly constructed bridge some time before 1960, and it again replaced some boards on the decking about October 1, 1971. Between those two dates employees of the Police Jury worked on the bridge “on and off” or “every now and then,” primarily when it was necessary to enable cattlemen to get their cattle out of the flooded swamp area lying west of the river. We are unable to determine from the testimony when any of these additional repairs were made, or whether the parish employees made them in the performance of the duties of their employment or simply to enable them to get their cattle out of the swamp. We also are unable to determine the nature of the repair work they performed. The evidence indicates that other repair work on the bridge was performed during that same period of time by cattlemen, hunters and logging operators. Actually, it appears to us that considerably more work was done on the bridge by the latter than by Police Jury employees. The bridge was not connected to a public road. It was used only by cattlemen, hunters, fishermen and loggers, and the evidence indicates that on the few occasions when the parish employees made repairs on it they did so at the *700 request of cattlemen and to assist the latter in emergencies.
We feel that the repairs performed on the bridge by the defendant Police Jury were not sufficient to constitute an implied or tacit dedication of the bridge to public use, under LSA-R.S. 48:491. In our opinion, the work performed by the parish employees amounted to no more than a “brushing up” or “token maintenance” of the bridge, as those terms are used in the above cited jurisprudence. The actions of the Police Jury, and the action or inaction on the part of the landowner, whoever he might have been, considered with all of the other facts, do not justify an inference that either of those parties intended that the bridge was to become a “public road or street,” or that it was to be dedicated for public use.
We agree with the trial judge that the bridge on which the accident occurred was not a public road or bridge, that the defendant Police Jury was not legally obligated to maintain or repair it, and that the Police Jury thus is not liable to plaintiff for the damages sustained by her arising out of the death of her husband.
In view of our conclusion that the defendant was not under a legal duty to maintain and repair the bridge, it is unnecessary for us to consider plaintiff’s argument that defendant failed to perform that duty.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED.