351 So.2d 113 (1977)
Mrs. Vera Mae ROBINSON et al.
v.
BEAUREGARD PARISH POLICE JURY.
No. 59631.
Supreme Court of Louisiana.
October 10, 1977.
*114 E. M. Nichols, Lake Charles, for plaintiff-applicant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., William C. Pegues, III, Dist. Atty., for defendant-respondent.
DIXON, Justice.
This action was instituted by Mrs. Vera Mae Robinson, individually and as natural tutrix of her minor children, against Beauregard Parish Police Jury for the wrongful death of the husband and father, who was killed when a bridge collapsed. The trial court rendered judgment in favor of the defendant. Plaintiff appealed to the Third Circuit Court of Appeal which affirmed the judgment. Robinson v. Beauregard Parish Police Jury, 342 So.2d 696 (La. App. 3d Cir. 1977). Plaintiff's application for rehearing was refused and this court granted writs to review the judgment of the Court of Appeal. 345 So.2d 53 (La. 1977).
The question before this court is whether or not the bridge upon which the accident which resulted in plaintiff's husband's death occurred is a public road or bridge.
The facts, as expressed by the Court of Appeal, 342 So.2d at 697-98, are as follows:
"Plaintiff's husband, Thomas Robinson, lost his life on December 20, 1971, when a large logging vehicle being operated by him overturned as it was being driven across a wooden bridge in a wooded area of Beauregard Parish. The vehicle fell upside down into the river or stream which was spanned by the bridge, and Robinson was drowned. There are no living eye witnesses to the accident.
"The decedent was working as a tractor operator for Galloway and Sons, logging contractors, at that time. The vehicle which he was operating is known as a `Pack-a-back.' It was a relatively large and heavy machine, it being a type of vehicle which was used in the logging industry to pick up logs and haul them to designated points where they are loaded onto trucks. The machine was about nine feet wide and eleven feet high, and it was equipped with large rubber tires.
"The decedent's employer, Galloway, was engaged in cutting and hauling timber from a wooded, swampy, relatively uninhabited area, located west of a small river or stream which ran generally north and south. There were no roads of any kind on the west side of the river. There, however, was a wooden bridge which spanned the above river at a point near *115 the place where Galloway was conducting his logging operations. The accident which resulted in Robinson's death occurred on that bridge.
"A blacktopped highway, running north and south, was located a little less than one mile east of the above bridge. An unpaved road, which was graded but otherwise was unimproved, ran from the blacktopped highway west to a point where a camp was located on a hill, about 100 to 150 yards east of the bridge. This unpaved road terminated at that camp. There was no road from the camp, or from the point where the above unpaved road terminated, to the bridge. In order for a vehicle to get from the camp to the bridge, it was necessary for it to travel downhill and around a curve, along an ungraded or unimproved trail. The evidence shows that no work had been done on the trail leading from the camp to the bridge. It, in fact, would have been impossible for a grader to do road work between the end of the above described unpaved road and the bridge.
"The bridge where the accident occurred, therefore, did not connect with any public road at all. There were no roads west of the bridge, and there was a space or distance of about 100 to 150 yards between the east end of the bridge and the nearest thoroughfare which might be considered to be a public road.
"The bridge was constructed of wood some time prior to 1960, and since that time it has been used almost exclusively by cattlemen, by hunters and by persons engaged in the logging industry. It is about 12 or 14 feet wide. When the bridge was built originally, the State Highway Department installed the pilings, stringers and caps, and the Beauregard Parish Police Jury placed the decking on the bridge. Since that time, the bridge has been repaired from time to time by cattlemen, hunters and loggers, and the Police Jury also has furnished some materials and labor in connection with the repair of that structure."
The trial judge held that the bridge was not part of a public road and therefore the police jury had no duty to keep the bridge properly maintained. Furthermore, he held that plaintiff had not proved negligence or liability on the part of defendant because (1) inspection of the broken parts of the bridge revealed that the timbers were solid, not rotten, (2) the police jury had no knowledge of any defect, and (3) the bridge had been inspected over a month before the accident by the police juror who had responsibility for roads and bridges in his ward, and appeared to be in good shape.
The Court of Appeal agreed with the trial judge that the bridge was not a public road or bridge and thus the defendant was not under a legal duty to maintain or repair it. For the reasons set forth below the judgment of the Court of Appeal is reversed and the case is remanded to the Court of Appeal to consider the issue of negligence. R.S. 48:491, the statute relied upon by plaintiff to show that the bridge was a public road, provides, in pertinent part:
"All roads or streets in this state that are opened, laid out or appointed . . . by virtue of an order of any parish governing authority in any parish, . . . or which have been or are hereafter kept up, maintained or worked for a period of three years by authority of any parish governing authority in its parish . . shall be public roads or streets as the case may be. . ."
The Court of Appeal recognized that through maintenance or work by a parish police jury for a period of three years, a road may become public by implied or tacit dedication of a servitude of passage. Police Jury, Parish of Catahoula v. Briggs, 291 So.2d 472 (La.App. 3d Cir. 1974); Town of Sorrento v. Templet, 255 So.2d 246 (La. App. 1st Cir. 1971); Winn Parish Police Jury v. Austin, 216 So.2d 166 (La.App. 2d Cir. 1968). However, an occasional "brushing up" or "token maintenance" of a private road is insufficient to establish an implied or tacit dedication for public use. Chargois v. St. Julien, 280 So.2d 847 (La. App. 3d Cir. 1973); Martin v. Cheramie, 264 So.2d 285 (La.App. 4th Cir. 1972).
*116 The court found that the work done on the bridge by the police jury, which was spasmodic and not exclusive in that hunters, loggers and cattlemen also worked on the bridge periodically, was no more than a "brushing up" or "token maintenance" of the bridge which was insufficient to constitute an implied or tacit dedication to public use under R.S. 48:491. 342 So.2d at 700.
Not only does R.S. 48:491 provide that a road is public when the parish governing authority has worked on or maintained it for a period of three years, it also provides that roads or streets opened, laid out or appointed by virtue of a parish governing authority are public.
The record reveals undisputed evidence that the bridge was actually built by the governing authority of the parish and the State before 1960. The bridge's pilings, stringers and caps were installed by the State Department of Highways at the request of the police jury; the police jury placed the decking on the bridge. The bridge was, therefore, owned by the public because it was built with public money at the request of the public body. On one side of the bridge was a dirt road connecting a camp 150 yards from the bridge to a blacktop highway less than a mile away; the dirt road was graded and regularly maintained by the parish. On the other side of the bridge were logging roads, not maintained by the parish.
Only upon abandonment by the public body could the bridge have lost its character as a public structure. The appellate court's finding that only minor work on the bridge was done by the parish and that much of the repairs were done by cattlemen, hunters and fishermen is of no moment. Furthermore, cases relied on by the court to find no tacit dedication under R.S. 48:491 are inapposite in that they involve property that was undisputably private. Rowe v. Harvey, 307 So.2d 103 (La.App. 1st Cir. 1974); Chargois v. St. Julien, supra; Martin v. Cheramie, supra.
Just as it is clear that the bridge was originally owned by the parish, it is equally clear that no abandonment by the police jury was intended or accomplished. Abandonment of a public road must be evidenced by (1) a formal act of revocation in accordance with R.S. 48:701, (2) relocation of the public road by the governing body, or (3) clear and well-established proof of intent by the governing body to abandon. Starnes v. Police Jury of Rapides Parish, 27 So.2d 134 (La.App.2d Cir. 1946). Nonuse of a strip of land as a public road or street for a period in excess of ten years may also result in termination of the public use. C.C. 789; Yiannopoulos, "Common, Public, and Private Things in Louisiana: Civilian Tradition and Modern Practice," 21 La.L. Rev. 696, 736 (1961).
There was neither a formal revocation nor a relocation by the police jury. In addition, the record discloses no evidence of intent to abandon. Although the labor for repairs was often supplied by cattlemen, hunters and logging operators, this does not lessen the significance of the fact that the police jury had helped maintain the road over a period of some twelve years. Indeed, the most recent repair involved the replacement of decking on the bridge just a few months before the accident. Inspections by the police jury were made periodically including one made approximately one month and another one week before the accident. Furthermore, there was no abandonment through nonuse. C.C. 789. The Court of Appeal gave undue emphasis to the fact that the bridge was "only used" by cattlemen, hunters, fishermen and loggers, 342 So.2d at 699; these are members of the body politic and their use can reasonably be termed public use.
The bridge was the responsibility of the parish. It was built originally by the parish and, even though the maintenance was not extensive, when viewed in conjunction with the original acts of building the bridge it at least preserved the public character of the bridge.
For the foregoing reasons, the judgment of the Court of Appeal is reversed. Because the courts below did not reach the questions of negligence and quantum, the *117 case is remanded to the Court of Appeal for further proceedings not inconsistent with this opinion. Determination of liability for costs will await disposition in the Court of Appeal.
SUMMERS, J., dissents for the reasons assigned by the Court of Appeal, 342 So.2d 696.