Dear Mr. Honeycutt:
Reference is made to your recent request for an opinion of this office, on behalf of the Livingston Parish Council, regarding the proposed maintenance and repair of a bridge constructed by the Parish in 1954 across a drainage canal that crosses private property.
According to your correspondence, the bridge in question spans Hornsby Creek and was built by the Police Jury at a time when the Creek, an existing natural drain, was enlarged. Contemporaneously with that work, a document styled "Right of Way Grant" was recorded with the Clerk of Court of Livingston Parish. According to your advice, the Police Jury agreed to build the bridge in order to provide a landowner, whose property is divided by the Creek, with greater access to his property. The Right of Way Grant consists of one page and is executed by the landowner/grantor only, before two witnesses, and pertinently provides:
 "That [landowner], does by these presents grant unto the Parish of Livingston, through its Police Jury, the necessary right-of-way for the construction, maintenance and improvement of drainage facilities through and across my property in:
 SECTIONS 27 28, T 6 SR 4 E 150' right of way with the understanding that the Police Jury is to construct a bridge across said drainage, location to be pointed out by grantor, and providing the contractor spread all dirt fill old creek bed —
* * *
 The consideration for this grant is the expectation of benefit to said property as a result of the drainage improvement program."
The Right of Way Grant does not require the Parish to repair or maintain the bridge, and contains no reference to maintenance or repair of the bridge. However, you advise that the Parish Council is prepared to enter into an "Amended Servitude Agreement" with the landowner, which agreement will require the Parish Council to repair and maintain the bridge. This office has been asked to advise the Parish Council as to whether or not it can enter into the Amended Servitude Agreement, and whether the Parish can undertake the immediate repairs, as well as future maintenance of the bridge.
Your inquiry must be examined in light of La. Const. Art. VII, §14(A), which prohibits the loan, pledge, or donation of the funds or assets of the state or any political subdivision "to or for any person, association, or corporation, public or private." Art. VII, § 14 has been interpreted by the Louisiana Supreme Court in City of Port Allen v.Louisiana Municipal Risk Agency, 439 So.2d 399 (La. 1983), which held that this constitutional provision is violated whenever the state or a political subdivision seeks to give up something of value when it is under no legal obligation to do so. In City of Port Allen, supra, the Court stated: "even if political subdivisions cooperate for a public purpose, they still may not give away their assets to other political subdivisions, the United States government or public or private associations or corporations or to individuals merely for a `public purpose'."
We also call your attention to certain previous opinions of this office, which provide guidance in addressing your question. Attorney General's Opinion No. 76-649 determined that the Bienville Parish Police Jury could not use parish equipment or materials to blacktop driveways located on private property. Attorney General's Opinion No. 77-1594 concluded that a Police Jury could not perform road work on private driveways and roads if the benefits of said work would inure only to the owner of the properties enhanced thereby and no substantial public purpose was served. Attorney General's Opinion No. 78-1643 concluded that the Catahoula Parish Police Jury could not expend public labor, materials or funds on the maintenance and repair of a road leading to one or even several residences, but not used by the public at large. Most pertinently, Attorney General's Opinion No. 95-41 concluded that a Police Jury could expend public funds to a repair a bridge built by the Police Jury, only if, in the opinion of the Police Jury, such work would further the best interests of the parish and the parish road system.
Although this office is not a finder of fact, it appears, based upon your advice that the bridge in question was built to serve only the private landowner whose property it sits on, even though it was built with parish funds. Given the Parish's authority to expropriate, the necessity for the construction of this bridge, on private property, is questionable. Because the bridge is built on private property, it may well be that the bridge was intended to be the property and responsibility of the landowner.
Clearly, however, no matter what the ownership of the bridge, the benefits resulting from Parish maintenance and improvement of the bridge would inure only to the private landowner, and not to the public at large. As such, it is our opinion that in accordance with La. Const. Art. VII, § 14, the Parish Council cannot undertake responsibility for the repair and maintenance of the bridge in question. The Parish of Livingston cannot repair a bridge on private property if the benefits of the work inure only to the owner of the property enhanced thereby and no substantial public purpose is served.
Of course, it is possible that the bridge was intended to belong to the Parish, for use by the public. Attorney General's Opinion No. 95-41, previously issued by this office, contains language and analysis that is quite pertinent in that regard. Therein we stated:
 "If there are facts indicating that the bridge has been and is today used by the public and that the repairs will further the best interest of the public, the police jury may expend funds to make necessary repairs to maintain the bridge. From the facts supplied, it may be inferred that neither the police jury nor the landowner intended the bridge to be used by the public at large as "public road or street" or that it was to be dedicated for public use.
 However, since the bridge was in fact constructed under the authority of the police jury, the bridge may be considered public property notwithstanding that it is on private property. If so, the bridge remains a public thing and the police jury may have liability for injuries or damages resulting from its deterioration. See, for instance, Robinson v. Beauregard Parish Police Jury, 351 So.2d 113 (La. 1977). See also, Jones v. City of Baton Rouge, 338 So.2d 737 (La. 1980) and its progeny. The bridge may have been abandoned by non-use for a period of ten years. C.C. 789. The Police Jury may wish to formally revoke its interest in the bridge in accordance the provisions R.S. 48:701.
 In summary, it is the opinion of this office that public funds cannot be expended to repair the bridge unless it is for the public benefit, i.e. the public at large as distinguished form a single property owner."
We trust the foregoing to be of assistance. Should you or the Police Jury need further assistance, please do not hesitate to contact us.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ________________________________ JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
RPI:JMZB:dra
Date Released: July 29, 2002