385 P.2d 963

Antonio APODACA, Plaintiff-Appellant,

v.

Jose BACA and Gavin Maloof & Company,
Defendants-Appellees.

No. 7245.

Supreme Court of New Mexico.

Sept. 16, 1963.

Lorenzo A. Chavez, Melvin L. Robins,
Albuquerque, for appellant.

Modrall, Seymour, Sperling, Roehl &
Harris, Leland S. Sedberry, Jr., Albuquerque, for appellees.

CHAVEZ, Justice.

This is an action for damages for personal injuries. In his complaint, plaintiff-appellant alleged that, while driving his automobile in a southerly direction over the railroad overpass in Tucumcari, New Mexico, appellee, Joe A. Baca, acting in the course of his employment by appellee, Gavin Maloof & Company, was driving a truck in a northerly direction on said overpass; that as the two vehicles approached each other, appellee Baca so negligently operated the truck that part of it struck the left side of appellant's automobile, causing

a fracture of appellant's left arm. Appellees answered, denying any negligence and alleged that appellant was guilty of contributory negligence. Appellees admitted the allegations as to the identity of appellees and that Baca was employed by Gavin Maloof & Company.

The case was tried before a jury. At the conclusion of the evidence, appellant moved to strike the testimony of Dr. H. V. Beighley in regard to the interpretation of the blood test, and moved the court to instruct the jury to disregard testimony relative to appellant's and Charlie Lucero's drinking on the day prior to the accident. Both motions were denied. A verdict for appellees was returned and judgment on the verdict entered. This appeal followed.

As appellant was driving in a southerly direction on the bridge, his left arm was resting on the window sill of his car, his elbow sticking out past the side of the car. Appellant testified that he remained on the west side of the bridge at all times as he was crossing said bridge and that, as his car was meeting appellee's truck, the rear door of the truck swung out and struck his arm. Appellee Baca testified that he was driving the truck on the east side of the overpass, about 10 or 15 miles per hour; that when he first saw appellant's car it was on appellee's side, the east side of the road; that it hit the east curb, bounced back to the west side "kind of sharply," straightened out and struck the bottom part

of the door of the truck. Baca further testified that the back doors of the truck were hooked flat against the side of the body when he left the warehouse, and that the doors of the truck were hooked when he examined them after the accident. Soloman J. Fresquez, who was riding with appellee on the right-hand side of the truck, was looking east down the overpass and did not see appellant's car until right before the collision. Appellant's car was going fast at that time. After the collision, Fresquez and Baca checked the door to the truck; the door of the truck "wasn't damaged at all, just a little old scratch." The truck door was locked in position before and after the accident. Fresquez also found the tire marks left by appellant's automobile on the west and east side of the curb, and showed Officer Shaw the scene of the accident. Fresquez thought that appellant was "drunk or something."

Appellant was treated at the Tucumcari General Hospital by Dr. A. T. Gordon for a fracture of the radius and the ulna of the left arm on May 23, 1960, about 1:00 p.m. Later, appellant returned to the hospital, as there was some more debridement, and a cast was put on at that time. As of the time of trial, appellant's left arm was angulated almost ninety degrees and had not properly healed. Appellant had impaired circulation in the arm.

About noon on Sunday, the day prior to the accident, appellant, together with Char-

lie Lucero and other relatives, traveled from Tucumcari to Dalhart, Texas, and were drinking beer. On the way back from Dalhart, Charlie Lucero and the others drank some beer but Lucero did not know whether or not appellant drank beer at that time. They returned home about 11:00 p. m. that night from Dalhart.

On the day the accident occurred, appellant drank at least three bottles of beer before noon. The accident occurred between 1:00 and 1:30 p. m. Officer Dudley Shaw testified that he investigated the accident and that he noted a very decided odor of alcohol on appellant's breath when appellant was in the emergency room at the hospital. At the hospital, Officer Shaw ordered Dr. A. T. Gordon to make a blood-alcohol test on appellant. A sample of blood was taken from appellant's body while he was unconscious and without having appellant's consent. A nurse withdrew the blood but Dr. Gordon was there in attendance. The blood sample was sealed in a test tube, marked and packaged by Dr. Gordon in the presence of Shaw, and Shaw retained possession of it until he took it to the Post Office and mailed it to Albuquerque for analysis. Dr. Beighley testified that the blood-alcohol test showed .19% alcohol and that persons who have that blood-alcohol content are under the influence of alcohol.

Under point II, which is decisive of this case, appellant contends that the trial court erred in admitting evidence of a blood-alcohol test when no proper foundation for its admission was made. Appellant says that evidence of a blood-alcohol test was admitted without it first having been established that the blood tested was appellant's blood; or if it was appellant's blood that was tested, that it was the blood withdrawn from appellant on the day the accident occurred.

Appellant directs our attention to discrepancies in the evidence as to who withdrew the blood from appellant. Dr. Gordon could not remember whether he or his nurse withdrew the blood, but stated that either he or his nurse withdrew the blood, and that if he did not do so that it was done under his direction. Dr. Gordon testified that the blood was withdrawn and placed in a dry, sterile tube, and that it was sent to Van Atta Laboratory in Albuquerque for analysis; that before he gave the specimen to Shaw, he placed a label on the specimen setting forth appellant's name, the name of the laboratory, and the purpose of the specimen.

Officer Shaw testified that the nurse, Mrs. Hitch, withdrew the blood in the presence of Dr. Gordon and himself; that after seeing the blood withdrawn from appellant, he took it into his possession and went to Dr. Gordon's office, where Dr. Gordon sealed the tube with a piece of cellophane tape, packaged the blood sample in his presence, and then Shaw took the package

to the Post Office and mailed it on May 23, 1960. Officer Shaw was shown Exhibit No. 13, which was identified but not offered or admitted.

Dr. H. V. Beighley, of the Beighley Laboratory in Albuquerque, testified that on or about May 27, 1960, he received a request from the Tucumcari Police Department to test and analyze a blood specimen; that the blood specimen was in a test tube, stoppered, and with a tag attached and wrapped securely around it; that it was delivered to his laboratory from Van Atta Laboratory because Van Atta no longer performed blood-alcohol tests; that the test on the sample was done in Beighley's Laboratory under Dr. Beighley's direction; that it was a standard blood-alcohol test, and the results of the test showed that the blood sample contained .19% alcohol; that, in his opinion, appellant was under the influence of intoxicating liquor; that it is their practice in the Beighley Laboratory, if there is any evidence of tampering with a specimen, that a notation thereof is made in their records.

When, how, by whom and in what manner or condition the specimen was received by Van Atta Laboratory is not shown by the evidence. How long, where and how the specimen was kept, as well as who had possession of the specimen from May 23, to May 27, 1960, is also not shown. Neither does the evidence show by whom, how and in what manner or condition the specimen was delivered to Beighley's Laboratory.

Appellees argue that the question, of whether a proper foundation has been laid for the admission of a blood-alcohol test, is for the trial court to determine and is within the trial court's discretion. No authority is cited for this proposition. We have held that whether or not a witness is qualified is a preliminary question for the trial court and the weight to be given the testimony is for the jury. Reid v. Brown, 56 N.M. 65, 240 P.2d 213. We doubt, however, that the question, of whether a proper foundation has been laid for the admission of a blood-alcohol test, is within the trial court's discretion.

The rule, as to the foundation which must be laid before evidence may be admitted as to the results of a blood test, is stated in 21 A.L.R.2d 1219, as follows:

"This is a problem in proving the taking, preservation, and adequate custody of a particular type of real evidence. The basic question is whether a thing (1) analyzed or examined by an expert in his laboratory or (2) produced in court as a basis for his demonstrations before the jury can be shown to have been taken from a particular human body. Proof of this identity involves showing in the first class of cases that (a) the thing was taken (b) from the particular body from which it was supposed to be tak-

en, and that thereafter it was properly (c) kept and, if necessary, (d) transported and (e) delivered to the expert who made the analysis or examination; and in the second class that like care was exercised until the thing was produced in court."

In State v. Reenstierna (1958), 101 N.H. 286, 140 A.2d 572, the court said:

" * * * One of the most important prerequisites for the admission of the results of chemical tests for intoxication is that the specimen analyzed shall be traced to the accused. Note, 51 Mich.L.Rev. 72, 79 (1952); anno. 21 A.L.R.2d 1216. The State is required to establish the essential links in the chain of evidence relied on to identify the blood analyzed as being the blood taken from the accused. Rodgers v. Commonwealth, 197 Va. 527, 90 S.E.2d 257; Estes v. State, 162 Tex.Cr.R. 122, 283 S.W.2d 52; Utah Farm Bureau Ins. Co. v. Chugg, 6 Utah 2d 399, 315 P. 2d 277. A recent comprehensive study of the decisions relating to the proper presentation of chemical tests for intoxication including practical suggestions is found in Donigan, Chemical Tests and The Law (The Traffic Institute—Northwestern University 1957) c. VI and VII."

See also, Benton v. Pellum, 232 S.C. 26, 100 S.E.2d 534; Utah Farm Bureau Ins. Co. v. Chugg, 6 Utah 2d 399, 315 P.2d 277.

■ It is necessary to satisfactorily identify the specimen of blood used in analysis as that belonging to the person whose intoxication is in question in both crminal and civil cases. See Anno. 159 A.L.R. 209, 224; Utah Farm Bureau Ins. Co. v. Chugg, supra.

Appellee relies upon Thomas v. Hogan (4 C.C.A., 1962), 308 F.2d 355, which is clearly distinguishable from the case before us. In that case, the principal question was whether a hospital record containing an entry showing the result of a Bogen's test for intoxication was admissible as a business record under the federal shop-book rule. 28 U.S.C.A. § 1732. Plaintiff had been struck by defendant's automobile and was taken to the nearby Navy dispensary where Dr. Schwartz was the attending physician. Following the usual procedure at the Navy dispensary, a corpsman extracted a sample of blood from plaintiff and conducted the distillation operation in the laboratory which is on the same premises. He then brought the test tube containing the discolored receiving solution to Dr. Schwartz who made the visual comparison. The test result showed that plaintiff had three milligrams of alcohol per cubic centimeter of blood, indicating that plaintiff was quite drunk. Defendant called Dr. Schwartz as a witness and sought to introduce through him the result of the Bogen's test which the doctor had ordered to determine the amount of alcohol in plaintiff's

blood. Alternatively, defendant tendered the hospital record containing an entry of the test result. Plaintiff objected to both tenders and the trial court sustained the objection. The Fourth Circuit Court held that the trial court committed prejudicial error in excluding the doctor's testimony concerning the result of the Bogen's blood test and that the Naval Hospital records containing an entry showing the result of the test was admissible under the federal shop-book rule. The court held that the "missing link" in the chain of identification of the blood sample between the corpsman's taking the blood and Dr. Schwartz's determination of the test result is supplied by the presumption of regularity which attaches under the shop-book statute.

In the instant case, there is a missing link in the chain of evidence between the time that the specimen was mailed by Officer Shaw in Tucumcari on May 23, 1960, and the time that it was received by the Beighley Laboratory in Albuquerque on May 27, 1960. The record shows that the package was addressed by Dr. Gordon to Van Atta Laboratory in Albuquerque, but, as hereinbefore pointed out, when, how, by whom and in what manner or condition the blood specimen was received by Van Atta Laboratory, and how, in what manner and by whom it was delivered to Beighley's Laboratory, is not shown by the evidence.

We are, therefore, constrained to hold that a proper foundation was not laid in order that the evidence, as to the result of the blood-alcohol test, may be received in evidence.

In view of our disposition of point II, it is not necessary and we do not consider points I and III.

The judgment of the district court is reversed and the case remanded with direction to grant a new trial.

It is so ordered.

COMPTON, C. J., and MOISE, J., concur.