567 P.2d 487

Dorothy WILLIAMS, Plaintiff-Appellant,

v.

Bill (William) COBB, Defendant-Appellee.

No. 2723.

Court of Appeals of New Mexico.

May 24, 1977.

Benjamin M. Sherman, Sherman & Sherman, Deming, for plaintiff-appellant.

Edward E. Triviz, Las Cruces, for defendant-appellee.

## OPINION

LOPEZ, Judge.

The plaintiff filed suit for damages and personal injury resulting from a collision at an intersection in Deming, New Mexico. The jury returned a verdict for the defendant and the trial court entered judgment accordingly. The plaintiff appeals. We reverse.

The plaintiff asserts reversible error with regard to several instructions which were given, and some which were refused, relating to the following issues: (1) contributory negligence; (2) sudden emergency; (3) independent intervening cause; and (4) the

assumption permitted to a motorist traveling on a thoroughfare.

The record establishes the following: the collision between the plaintiff's and the defendant's cars occurred at the intersection of Spruce Street, a thoroughfare running east and west, and Iron Street, an intersecting street running north and south. There was a stop sign which was turned sideways on the northwest corner of the intersection; the sign was supposed to face north to stop traffic traveling south on the intersecting street, Iron Street. Just prior to the collision, the plaintiff was driving in an easterly direction at a speed of between 22 to 25 miles per hour. The plaintiff, a long time resident of Deming, was familiar with the street and knew that she was on the designated right-of-way. The defendant was driving his automobile in a southerly direction on Iron Street at a speed of 25 miles per hour. The defendant was unfamiliar with the community. The defendant did not see the stop sign because it was turned sideways so that only its edge was visible. Neither plaintiff nor defendant stopped at the intersection. The record reveals that the view at the intersection was partially obstructed, both cars entered the intersection at approximately the same time, neither at excessive speed, and the accident happened too quickly for either party to avoid the collision.

The question presented by this case appears to be one of first impression in New Mexico. The question is well summarized in 74 A.L.R.2d 242, 243 (1960), which annotates many similar cases. Therein, the question was stated as this:

"What effect, if any, does a missing, displaced, or obliterated stop sign, or a malfunctioning traffic signal, have upon the liability of a motorist for a collision at the intersection of an arterial highway, boulevard, or through street with an unfavored servient or secondary street or road?"

For clarity we will refer to Spruce Street, which is the thoroughfare, arterial highway or boulevard, as a "through" street, i. e., having no stop signs or traffic signals at the particular intersection. We will refer to the unfavored servient or secondary street as the "intersecting" street. We will address the appellant's last point first.

### Assumption Permitted to a Motorist on a Through Street

The contention is that the court erred by failing to instruct the jury as to the assumption permitted to one traveling on a through street. The plaintiff tendered two instructions:

"If you find that Dorothy Williams was traveling on a through street and did not see whether a driver approaching the intersection with the through street did or would not stop for the through street, you must find that Dorothy Williams was not contributorily [sic] negligent. But if you find that Dorothy Williams was aware that the driver approaching the through street intersection was not going to stop at the "stop" sign before entering the intersection, you must find that Dorothy Williams had a duty to take steps to avert a collision and to take precautions commensurate with the dangers reasonably to be anticipated under the circumstances.

"3 Blashfield, Automobile Law and Practice Sec. 114.102 p 229"

"You are instructed that an automobile driver, with knowledge of location of stop signs, has a right to rely, when crossing intersection, upon the assumption that anyone approaching will observe same, and will not undertake to cross against them and need not anticipate that a driver will enter the intersection in violation of a stop sign.

"*Mayfield v. Crowdus,* 38 N.M. 471 (1934) 3–4 Huddley's [sic] Encyclopedia of Automobile Law (9th ed) sec. 154, 1 Blashfield's Cyclopedia of Automobile Law Sec 24 (1932) p. 68, 2 Blashfield, Cyclopedia of Automobile Law and Practices Sect. [sic] 1028 at P. 305 & 306"

There exists a general rule of law applicable to this case. In a factual context quite similar to the case at bar, the Louisiana Court of Appeal for the Fourth Circuit

considered the general rule. In the case of *Ory v. Travelers Insurance Co.,* 235 So.2d 212 (La.App.1970) the court said:

". . . It [the Louisiana Court of Appeal for the Third Circuit in *Fontenot v. Hudak,* 153 So.2d 120 (La.App.1963)] observed that *had the stop sign been standing, clearly plaintiff would have been entitled to recovery,* citing *Martin v. Barros,* 142 So.2d 171 (La.App.3d Cir. 1962); and *Hernandez v. State Farm Mutual Ins. Co.,* 128 So.2d 833 (La.App.3d Cir. 1961). The court then went on to say:

'The general rule of law in a case where a stop sign has been misplaced, improperly removed, destroyed or obliterated is set out in 74 A.L.R.2d at pages 245 and 246, and reads as follows:

"Where the boulevard, through street, or arterial highway has been properly designated and appropriate signs have been erected, it ordinarily has been held that *the preferred status of the highway is not lost merely because a stop sign is misplaced, improperly removed, destroyed, or obliterated.*

. . .

"*The rule that a motorist driving on an arterial or preferred road protected by stop signs is entitled to assume that the driver of a vehicle on an intersecting servient street will obey the law and stop or yield the right of way has been held not rendered inapplicable because a stop sign which ordinarily should face the motorist on the side street has been misplaced, destroyed or improperly removed.* But the right to rely on the assumption may be lost where the driver on the arterial road is not himself exercising due care while approaching or crossing the intersection, and motorist [sic] upon arterial highways will be held liable, of course, for collisions resulting from their failure to exercise due care toward traffic on the intersecting road." ' " [Emphasis added]

Several cases have taken exception to the general rule, one of which is relied on by defendant. *Schmit v. Jansen,* 247 Wis. 648, 20 N.W.2d 542, 162 A.L.R. 925 (1945). But the *Schmit* case is distinguishable. In *Schmit* the court found evidence that each party used the same degree of caution and the accident occurred as each party, using reasonable care, relied on presumed rights-of-way. The defendant in *Schmit* had the general right-of-way. In the instant case the plaintiff was not only on the through street, but she also had the general right-of-way. We proceed to explain this distinction.

We note that there exist two distinct rights-of-way on the highways of New Mexico. The first is often referred to as the general rule or statutory right-of-way. This is exemplified by § 64–18–27, N.M.S.A. 1953 (2d Repl.Vol. 9, pt. 2, 1972) which states:

"*Vehicle approaching or entering intersection.*—(a) The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway.

"(b) When two [2] vehicles enter an intersection from different highways at approximately the same time *the driver of the vehicle on the left shall yield the right of way to the vehicle on the right.*

"(c) The right of way rules declared in paragraphs (a) and (b) are modified at through highways and otherwise as hereinafter stated in this article [64–18–27 to 64–18–31]." [Emphasis added].

For clarity we will refer to this as the general right-of-way.

The general right-of-way applies only when neither street at an intersection is a through street. *Bunton v. Hull,* 51 N.M. 5, 177 P.2d 168 (1947). The general right-of-way can be modified as provided by § 64–18–27(c), supra. The modified right-of-way is often referred to as a modified, designated, controlled, or preferential right-of-way. A stop sign creates one such right-of-way, as stated in § 64–18–29, N.M.S.A.1953 (2d Repl.Vol. 9, pt. 2, 1972):

"*Vehicles entering stop or yield intersection.*—A. *Preferential right of way at an intersection may be indicated by*

*stop signs* or yield signs as authorized in the Motor Vehicle Code.

"B. Except when directed to proceed by a police officer or traffic-control signal, every driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop as required by section 64–18–44C and after having stopped shall yield the right of way to any vehicle which has entered the intersection from another highway or which is approaching so closely on the highway as to constitute an immediate hazard during the time when the driver is moving across or within the intersection." [Emphasis added] For clarity we will refer to this as the preferential right-of-way.

Several cases follow the *Schmit* case. *Schmit* considers an intersection where the stop sign has been destroyed, obliterated, or rendered useless, as an uncontrolled intersection. The analysis then looks to the general right-of-way to determine if an unavoidable accident has occurred. See, e. g., *Austinson v. Kilpatrick,* 105 N.W.2d 258 (N.D.1960); *Hammon v. Brazda,* 173 Neb. 1, 112 N.W.2d 272 (1961).

Fortunately, this Court does not need to choose between two apparently conflicting points of view because the plaintiff in the instant case had both the preferential and general rights-of-way.

Although we believe that the better view is that the preferred status of a through street is not lost merely because a stop sign is misplaced, improperly removed, destroyed, or obliterated, *Jenkins v. City of Alexandria,* 324 So.2d 924 (La.App.1976), cert. denied, La., 328 So.2d 105 (1976), the facts of this case present a clear solution because the defendant entered the intersection with no apparent right-of-way. The facts are analogous to the case of *Cangiamilla v. Brindell-Bruno, Inc.,* 210 So.2d 534 (La.App.1968), cert. denied, 252 La. 839, 214 So.2d 162 (1968). Therein the court held that the motorist on the intersecting street was negligent in failing to maintain a proper lookout. Regardless whether the intersecting motorist knew or should have known of the stop sign, he entered the

intersection *with no apparent right-of-way* and collided with a vehicle that under normal circumstances would have had both the preferential right-of-way if proper controls had been in place as well as the general right-of-way. See *Funderburk v. Temple,* 268 So.2d 689 (La.App.1972), cert. denied, La., 270 So.2d 875 (1973). We adopt this reasoning; it is compelling and dispositive.

The requested instructions did not provide the plaintiff with an absolute right-of-way. The instructions impose a duty on the driver along the through street to keep a proper lookout. See, e. g., *Dillman v. Allstate Insurance Company,* 265 So.2d 322 (La.App.1972). But in this case the plaintiff did everything possible to avoid the collision even though she had the right-of-way. The plaintiff testified that if she had been aware of the defendant's car entering the intersection, she would not have proceeded. If the plaintiff did all she could to avoid the accident, she had a right to proceed through the intersection; therefore, the requested instruction stated the correct rule of law and should have been given.

In essence, the instructions state the rule of *Barbieri v. Jennings,* 90 N.M. 83, 559 P.2d 1210 (Ct.App.1976). The driver of an automobile has a right to assume that the drivers of other automobiles will obey the law. *Bunton v. Hull,* supra. We believe that the plaintiff was entitled to the two instructions because there was evidence to support the proposed theories. *Sandoval v. Cortez,* 88 N.M. 170, 538 P.2d 1192 (Ct.App. 1975).

*Plaintiff's Contributory Negligence*

The plaintiff objects to the trial court giving part of instruction no. 2, an affirmative defense, which reads as follows:

".  .  . 1. The plaintiff was contributorily [sic] negligent and cannot recover in that:

".  .  .

"d. In the exercise of reasonable care and caution plaintiff should have observed that the stop sign was so situated as to be ineffective to the defendant as a

motorist and, therefore, not have relied on a right of way."

Plaintiff argues that there is no evidence to justify the giving of this instruction. Plaintiff argues that the instruction is a misstatement· of the law because it requires a driver on a through street to examine the stop signs along intersecting streets to see if the signs are in their proper place.

■ In this case, although the plaintiff knew the existence of a stop sign, there was no evidence that plaintiff knew the sign was turned sideways. A party is entitled to have the jury instructed on all legal theories of the case which are supported by substantial evidence. *Sandoval v. Cortez,* supra. This portion of the instruction was erroneously given because it is not supported either by evidence or by law.

We believe that to require the driver on a through street to know the condition of the stop signs along intersecting streets is a misstatement of the law. The correct rule of law, that the person on the through street can justifiably rely on others to stop (or obey the law), has already been discussed under the first part of this opinion. See *Barbieri v. Jennings,* supra; *Bunton v. Hull,* supra; *Mayfield v. Crowdus,* 38 N.M. 471, 35 P.2d 291 (1934); 3 A.L.R.3d 180, 255 (1965).

Plaintiff also objects to the portion of N.M.U.J.I. Civ. 3.1, given in instruction no. 2:

"If, on the other hand, you find that any one of the claims required to be proved by plaintiff has not been proved (or that any one of the defendant's affirmative defenses have been proved), then your verdict should be for the defendant."

Appellant's argument is without merit. The Supreme Court ·by order adopted this instruction; therefore, we are bound to follow the Supreme Court's order on the use of these approved instructions. This Court is not free to abolish the instruction. *State v. Scott,* 90 N.M. 256, 561 P.2d 1349 (Ct.App.) decided March 1, 1977.

*Sudden Emergency*

The court gave N.M.U.J.I. Civ. 13.14 regarding sudden emergency.

The plaintiff does not object to the instruction as being an incorrect statement of the law; the plaintiff argues that the evidence did not justify the giving of the instruction.

■ Assuming, arguendo, that there was an emergency, according to *Seele v. Purcell,* 45 N.M. 176, 113 P.2d 320 (1941), the Supreme Court, quoting from 42 C.J. Motor Vehicles § 592 (1927) stated:

"Where the automobilist created the emergency, or brought about the perilous situation, through his own negligence, he cannot avoid liability for an injury on the ground that his acts were done in the stress of emergency."

Even if we were to agree that there was an emergency, there was evidence the emergency was caused by the defendant's negligence; therefore, he cannot take advantage of a sudden emergency instruction. 80 A.L. R.2d 5, 16 (1961). Any emergency was a natural and direct result of the defendant's failure to stop before entering the intersection. The defendant was not "without negligence on his part." We believe that the sudden emergency instruction should not have been given because it served to confuse the jury by injecting a false issue. *Embrey v. Galentin,* 76 N.M. 719, 418 P.2d 62 (1966).

*Independent Intervening Cause*

At the request of the defendant, the trial court gave instruction no. 20:

"A negligent act or omission cannot be said to be a proximate cause of an injury if, between the time of the negligent act or omission and the time of the injury in question there occurs an 'independent intervening cause' of such injury.

"An 'independent intervening cause' is an act or omission which interrupts the natural sequence of events following from the first act or omission, turns aside its course, prevents the fulfillment of the natural and probable result of the original act or omission, and produces a differ-

ent result that could not have been reasonably foreseen to have been a result of the original act or omission."

This instruction is N.M.U.J.I. Civ. 13.15.

The plaintiff argues that there was no evidence to justify the instruction. The defendant asserts that the sign which had been turned sideways was an independent intervening cause.

We have looked at the record and it shows that, prior to the collision, the defendant did not see the stop sign because he was looking to the left, away from the sign. Whether or not the sign was misplaced is immaterial because the defendant did not look in the direction of the stop sign.

*Thompson v. Anderman,* 59 N.M. 400, 285 P.2d 507 (1955) states that before an instruction on independent intervening cause is given, there must be an intervening act which breaks the natural sequence of the negligent conduct of one of the parties, so the unforeseeable intervening act stands as the efficient cause of the injury and damage. The defendant has failed, however, to present evidence that any act broke the natural sequence of events, caused the accident, and thereby insulated the negligence of the original tortfeasor. Failure to keep a lookout and running the stop sign produced a foreseeable result, *Lopez v. Southern Pacific Company,* 499 F.2d 767 (10th Cir. 1974), and was the proximate cause of the accident. *Sellman v. Haddock,* 66 N.M. 206, 345 P.2d 416 (1959). See also *Vallot v. Touchet,* 337 So.2d 687 (La.App.1976); *Mondello v. State Dept. of Highways,* 338 So.2d 730 (La.App.1976), cert. denied, La., 340 So.2d 991 (1977).

■ We believe that the submission of the instruction created a false issue which misled and confused because the jury may have found the defendant negligent, but could have considered the condition of the stop sign to excuse or justify the negligence. See *Embrey v. Galentin,* supra. It was reversible error to give this instruction. See *Kelly v. Montoya,* 81 N.M. 591, 470 P.2d 563 (Ct.App.1970).

The jury verdict and the judgment are reversed and the cause is remanded to the district court for a new trial to proceed in accordance with this opinion.

IT IS SO ORDERED.

SUTIN and HERNANDEZ, JJ., specially concurring.

SUTIN, Judge (specially concurring).

*I concur in the result.*

Judge Lopez' opinion holds that the refusal of plaintiff's requested instructions on "assumption" is reversible error. I disagree. The opinion holds that the trial court's instructions on the affirmative defense of contributory negligence, sudden emergency and independent intervening cause are reversible error. I agree.

The opinion also contains statements, citation of authorities and discussions with which I disagree. But to specify each disagreement would add fuel to the fire.

To me, it is a sad day in the field of negligence law to note that attorneys submit non-U.J.I. instructions to bolster a claim for relief or an affirmative defense, submit U.J.I. instructions that are clearly inapplicable, and weave theories of law that lead juries astray. To invite reversible error is foolish and puerile. To plead for "harmless error" is a plea to sustain a verdict of the jury without the unknowable fact of its impact on the jury. The use of the doctrine of "harmless error" in the submission of erroneous instructions to the jury means that the appellate judges are returning their own verdict, preceded by, but independent of, the jury's verdict. This appellate verdict is founded upon a knowledge of the learning of jurors and their discussion of the erroneous instructions given. Appellate judges are able to and do disregard improper matters, but it is impossible to know that the jury did.

Experience has taught me that jurors are a cross section of people in the community with average intelligence, sincere in their devotion to this service. Instructions are read and analyzed, discussed and debated. Each instruction given does bear upon the verdict of the jury. For these reasons, we

have adopted U.J.I. to try and avoid reversible error. Jurors heed the legal instructions given by a judge, the expert, and accord to him appropriate respect for his superior legal wisdom.

Attorneys who participate in negligence trials should read, study and know the impact of non-U.J.I. instructions and improper U.J.I. instructions submitted to a jury. To win the battle on instructions and lose the war does not comport with a fair trial.

This appeal is based on error in the court giving three instructions, and its failure to give two of plaintiff's requested instructions.

### A. *Instruction on defendant's affirmative defenses was erroneous.*

The court instructed the jury that:

1. The plaintiff was contributorily negligent and cannot recover in that:

\* \* \* \* \* \*

d. In the exercise of reasonable care and caution plaintiff should have observed that the stop sign was so situated as to be ineffective to the defendant as a motorist and, therefore, not have relied on a right of way.

In effect, it told the jury that plaintiff should not rely on the right-of-way if she should have seen that the stop sign was ineffective to the defendant. Defendant does not explain by what process of mental reasoning plaintiff could know what effect a stop sign turned edgewise can have on defendant driving into the intersection at 25 miles per hour. The jury could well have believed that plaintiff, in the exercise of reasonable care, had a duty at some time prior to the collision, to slow down or stop and observe the stop sign turned edgewise on an intersecting street, to see what effect the stop sign turned edgewise would have on a motorist driving into the intersection, and perhaps yield the right-of-way. This would require plaintiff to drive down defendant's street to make the determination of cause and effect.

We are not aware of any rule of the road that requires a driver on an arterial highway to examine stop signs on an intersecting street to see if they are properly in place or position and what effect the stop sign will have on a motorist driving into the arterial highway from an intersecting street. If the defendant had any complaint to make, he should have pointed his finger at the City, not the plaintiff.

■ A right-of-way is not exclusive. Plaintiff had a duty to exercise reasonable care to avoid a collision when she became aware of the fact that defendant would not yield the right-of-way. *Langenegger v. McNally*, 50 N.M. 96, 171 P.2d 316 (1946). This burden was placed on plaintiff in the above instruction. Instruction 1(a), (b) and (c) required plaintiff to keep a proper lookout, control her car and control speed. Defendant could ask for no more.

Furthermore, U.J.I. 3.1 contains a note: Here set forth in simple form such affirmative defenses which are supported by the evidence such as
The plaintiff was contributorily negligent in that:
(1) The defendant was entitled to the right of way, which plaintiff failed to yield to him.
(2) The plaintiff was not keeping a proper lookout to avoid a collision.

Instruction 1(d) was not supported by any evidence.

U.J.I. 3.1, *Directions On Use* says:
This is the most important single instruction in the lawsuit, and court and counsel should give particular attention to it.

When court and counsel flagrantly abuse this cautionary directive, they must begin the trial all over again. Being clear, manifest and palpable error on one of the crucial issues in the case, it is prejudicial error.

### B. *U.J.I. 3.1 on plaintiff's burden of proof is confusing.*

Plaintiff objected to a portion of U.J.I. 3.1 because it was misleading and it led the jury to believe plaintiff had a duty to prove all acts of negligence of the defendant instead of one act of negligence.

U.J.I. 3.1 reads, and the jury instructed, that:

> The plaintiff has the burden of proving that [she] sustained damage and *that one or more of the claimed acts of negligence* was the proximate cause thereof.

> \* \* \* \* \* \*

> If you find that the plaintiff has proved *those claims required of [her]* . . . then your verdict should be for the plaintiff.

> If on the other hand, you find that *any one of the claims* required to be proved by plaintiff *has not been proved* . . . then your verdict should be for the defendant. [Emphasis added.]

■ Plaintiff made only one claim for relief based on several acts or claims of negligence. The jury instructions were sent to the jury room. They are usually read and analyzed. The average mind of a juror could conclude that the plaintiff must prove "those claimed *acts* of negligence required of her," and if she does not prove "any one of the claims" she cannot recover. For example, the word "cloud" means a dark spot on the forehead of a horse between the eyes. To a jury it can mean a host of definitions. There is a difference between a "claim" and a "claim for relief". To avoid confusion, the concluding portion of U.J.I. 3.1 should read:

> If you find that the plaintiff has proved *"the claim(s) for relief"* required of her . . . then your verdict should be for the plaintiff.

> If on the other hand, you find that plaintiff's *"claim(s) for relief"* . . . has not been proved . . . then your verdict should be for the defendant. [Emphasis added.]

This suggestion also applies to affirmative defenses.

If the jury believed that plaintiff had to prove all of the alleged acts of negligence of the defendant set forth in the instruction, it could have affected the verdict.

**C.** *The sudden emergency instruction was erroneous.*

■ In the instant case, the facts show that defendant did not have a choice between two courses of action to take to avoid the collision. "The sudden emergency doctrine applies to the choice an actor makes after he is confronted with sudden peril through no fault of his own." *Martinez v. Schmick,* (Ct.App.) 90 N.M. 529, 565 P.2d 1046, decided May 10, 1977 (Sutin, J., dissenting). Under the facts of this case, giving U.J.I. 13.14, Sudden Emergency, was reversible error.

**D.** *Plaintiff's requested instruction on contributory negligence and "assumption" were properly refused.*

Plaintiff's requested instructions on "assumption" are set forth in Judge Lopez' opinion. The first one says: "[Y]ou must find that Dorothy Williams was not contributorily negligent." The error of this instruction needs no comment. The second one provides that plaintiff had a right to rely "upon the assumption" that defendant would see the stop sign and not undertake to cross the intersection, and need not anticipate that a driver will enter the intersection in violation of a stop sign.

■ These are not U.J.I. instructions and they were properly refused. Uniform jury instructions have been in existence for over eleven years. Yet, trial attorneys and district judges fail to read Rule 51(c) and (e) [§ 21–1–1(51)(c), (e), N.M.S.A.1953 (Repl. Vol. 4)]. Rule 51(c) says: ". . . [T]he U.J.I. instruction shall be used unless under the facts or circumstances of the particular case the published Uniform Jury Instruction is erroneous or otherwise improper, and the trial court so finds and states of record its reasons." The trial attorney and the district court should know that non-U.J.I. instructions are a nuisance; that the submission of them to the jury can be reversible error.

Rule 51(e) allows attorneys to request non-U.J.I. instructions on a subject like products liability where no applicable instruction on the subject is available. See, U.J.I. 16.5. Instructions on products liabili-

ty have been drafted by the Supreme Court Committee and will soon be made effective.

We recognize that a driver on a through highway has the right to assume that a driver on the intersecting stop road would obey the law by coming to a full stop before entering the highway. *Bunton v. Hull,* 51 N.M. 5, 177 P.2d 168 (1947). But the right to instruct upon this "assumption" is foreclosed until the Supreme Court adopts an instruction on this theory. "Assumption" is a matter of argument, in this case, to avoid contributory negligence.

E. *The "intervening cause" instruction was erroneous.*

■ The "intervening cause" instruction appears in Judge Lopez' opinion. To request and submit this instruction under the facts of this case is nonsense. To argue that a stop sign, turned edgewise, is an independent, intervening cause of an intersection collision is twiddle-twaddle. It does not require the citation of authority.

HERNANDEZ, Judge (specially concurring).

■■ I concur in the result. I disagree with Judge Lopez on his point one, "Assumption Permitted to a Motorist on a Through Street." The cases on this point in other jurisdictions are generally in accord with *Ory v. Travelers Insurance Co.,* supra. I do not agree with Judge Lopez' analysis that *Schmit v. Jansen,* 247 Wis. 648, 20 N.W.2d 542, 162 A.L.R. 925 (1945) is an exception to the rule of *Ory,* supra. *Schmit* shares with *Ory* the view that a motorist on a through street has the right to rely on the assumption that traffic on a cross street will stop before entering an intersection with a through street, and that the assumption holds even when a stop sign on the cross street is missing or displaced. *Schmit* simply found that there was an unavoidable accident because, under the facts of the case, the motorist on the through street had the preferential right-of-way, while the motorist on the cross street had the general right-of-way because the other driver was approaching from her left. Although I agree with Judge Lopez about the rules of right-of-way and their application in this case, I cannot agree that it was error for the trial court to refuse the first of the tendered instructions on the subject, because the instruction does not state the law correctly. The last sentence quoted from *Ory* by Judge Lopez sums up what is missing from the tendered instruction:

"But the right to rely on the assumption may be lost where the driver on the arterial road is not himself exercising due care while approaching or crossing the intersection, and motorist [sic] upon arterial highways will be held liable, of course, for collisions resulting from their failure to exercise due care toward traffic on the intersecting road." [*Ory v. Travelers Insurance Co.,* supra.]

Neither of the tendered instructions gives an adequate indication that plaintiff was still subject to the duty of ordinary care despite her right to rely on having the right-of-way, so that if she saw or *should have seen* defendant's car approaching, she had a duty to try to avoid the collision. The second sentence of the first instruction makes a stab at this, but the error has already been committed in the first sentence, which directs a verdict for plaintiff if she did not see defendant, without regard to whether she should have seen him. It is not error for the trial court to refuse an instruction which is incomplete, erroneous or repetitious. *LaBarge v. Stewart,* 84 N.M. 222, 501 P.2d 666 (Ct.App.1972); cert. denied, 84 N.M. 219, 501 P.2d 663 (1972); *Goodman v. Venable,* 82 N.M. 450, 483 P.2d 505 (Ct.App.1971).

■ Point two, "Plaintiff's Contributory Negligence." Part 1d of this instruction is so clearly lacking support in the evidence that comment is unnecessary. The other portion of the instruction to which plaintiff objects is as follows:

"If, on the other hand, you find that any one of the claims required to be proved by the plaintiff has not been proved or that any one of the defendant's affirmative defenses have been proved, then your verdict should be for the defendant." [N.M.U.J.I. Civ. 3.1]

Plaintiff rightly contends that this instruction is misleading, since it might easily be understood to mean that plaintiff must prove all of the five claimed acts of negligence set forth in Instruction No. 1, while in fact plaintiff need only prove one of them. Rule 51(c) (N.M.R.Civ.P. 51(c), § 21-1-1(51)(c), N.M.S.A.1953 ((Repl. Vol. 4, 1970)) provides that "the U.J.I. instruction shall be used unless under the facts or circumstances of the particular case the published Uniform Jury Instruction is erroneous or otherwise improper . . . ." The purpose of instructing the jury is to make the issues that it is to determine plain and clear. *Embrey v. Galentin,* 76 N.M. 719, 418 P.2d 62 (1966). Changing the phrase "any one of the claims" to "any claim" would make Instruction No. 2 less likely to mislead the jury.

■ Point three, "Sudden Emergency." What Judge Lopez intends to hold on this point is not clear. He says, ". . . there was evidence the emergency was caused by the defendant's negligence; therefore, he cannot take advantage of a sudden emergency instruction." This court has held twice in recent months that the existence of a jury question with regard to whether the party offering the sudden emergency instruction contributed by his own negligence to creating the emergency is not a bar to giving the sudden emergency instruction where there is evidence to support it. *Martinez v. Schmick,* 90 N.M. 529, 565 P.2d 1046 (Ct.App.1977); *Barvier v. Jennings,* 90 N.M. 83, 559 P.2d 1210 (Ct. App.1976). Only if the court can rule as a matter of law that there was prior negligence which contributed to creating the emergency can the sudden emergency instruction be refused. It is not clear whether Judge Lopez intends to hold as a matter of law that defendant in the instant case was guilty of prior negligence. I believe this was a proper question for the jury and the emergency instruction should have been given. Defendant's testimony indicates that he had two possible courses of action in the emergency, to slam on his brakes or to try to go around plaintiff's car.

■ Point four, "Independent Intervening Cause." I concur with Judge Lopez on this, although I question the implication in his opinion that defendant ran a stop sign, since there was no visible sign for him to run.