630 P.2d 285

**John MALCZEWSKI, Plaintiff-Appellee,**

v.

**McREYNOLDS CONSTRUCTION COMPANY,
Defendant-Appellant.**

**No. 4813.**

Court of Appeals of New Mexico.

April 9, 1981.

Walter J. Melendres, Montgomery & Andrews, P.A., Santa Fe, for defendant-appellant.

Solomon, Roth & VanAmberg, Santa Fe, for plaintiff-appellee.

### ' OPINION

SUTIN, Judge.

Due to the negligence of the operator of defendant's truck, plaintiff jumped off the Pojoaque bridge, landed in the sandy river bed below, and suffered extensive injuries. The jury awarded plaintiff $360,000.00 and defendant appeals from the judgment entered. We affirm.

The issues raised in this appeal relate to the award of damages. We will discuss each of the points *seriatim*.

A. *The trial court properly allowed Dr. Dillman, an economist, to testify as an expert on vocational evaluation and prognostication.*

In *Torres v. Sierra*, 89 N.M. 441, 445, 553 P.2d 721 (Ct.App.1976) we said:

Dr. Everett G. Dillman, an economic statistician, testified on behalf of plaintiff on the subject of damages. He is recognized as a competent witness whose qualifications are unimpeachable. [Citation omitted.]

See also, *Wilson v. Wylie*, 86 N.M. 9, 518 P.2d 1213 (Ct.App.1973) in which Dr. Dillman testified as to the pecuniary value of decedent's earning capacity.

Defendant claims that the trial court erroneously allowed Dr. Everett G. Dillman, a noted economist, to testify as a vocational "rehabilitation" expert. Defendant has not defined the word "rehabilitation" nor pointed to any Dillman testimony related to that subject matter.

When Dr. Dillman was offered as an expert in making evaluations about impaired lost earning capacity and related matters therein, defendant had no objection to these qualifications. Defendant wanted to make it clear that Dr. Dillman was not holding himself out as a vocational or rehabilitation expert. On voir dire of Dr. Dillman by defendant, Dr. Dillman was asked this question to which he made this answer:

Q. You are not holding yourself out as an·expert, as a vocational *or* rehabilitation expert? [Emphasis added.]

A. That is not true. I have an expertise in personnel and vocational evaluation and vocational prognostication.

"Vocational Rehabilitation Services" is provided for in § 52–1–50, N.M.S.A.1978 of the Workmen's Compensation Act. "Vocational rehabilitation arises after such partial disability has occurred that a workman is unable to return to his former job, yet he desires to *retrain* himself for suitable employment. * * * He wants to better himself by vocational rehabilitation." [Emphasis added.] *Ruiz v. City of Albuquerque*, 91 N.M. 526, 530–31, 577 P.2d 424 (Ct.App. 1978). See *Lane v. Levi Strauss & Co.*, 92 N.M. 504, 590 P.2d 652 (Ct.App.1979). It is "a means for *retraining* an injured employee in an effort to direct his limited physical capability into other useful channels of productivity." [Emphasis added.] *Bender v. Deflon Anderson Corporation*, 298 A.2d 346, 348 (Del.Super.1972).

Vocational rehabilitation involves methods to be used in retraining an injured person. Dr. Dillman did not testify in this field of activity.

*First*, defendant argues that the trial court allowed the jury to decide the preliminary question of Dr. Dillman's qualifications. Defendant is mistaken.

Whether a witness is shown to be qualified as an expert is a preliminary question for the court to decide. *Reid v. Brown*, 56 N.M. 65, 240 P.2d 213 (1952); *Apodaca v. Baca*, 73 N.M. 104, 385 P.2d 963 (1963). "The court has wide discretion in determining whether one offered as an expert witness is competent and qualified." *Jaramillo v. Anaconda Co.*, 71 N.M. 161, 164, 376 P.2d 954 (1962).

Defendant objected to Dr. Dillman's qualifications on the ground that Dr. Dillman "is not or has not been trained as a vocational expert in *rehabilitation.*" The court said:

I will [let] the jury decide that particular fact issue. *The witness will be deemed qualified to express opinions before this Court concerning the evaluation of impaired or lost earning capacity and related matters.* [Emphasis added.]

The court determined that Dr. Dillman was "qualified." Defendant places emphasis upon the first sentence that, on rehabilitation, the jury will be allowed to decide "that particular issue." This issue was not submitted to the jury to decide. A jury cannot decide whether Dillman was or was not a vocational rehabilitation expert unless the jury is instructed on the issue or special interrogatories are submitted. The statement made by the court was an inadvertent expression. The trial court, not the jury, determined Dr. Dillman's qualifications

*Second*, defendant claims that the court erred in allowing Dr. Dillman to testify as an expert in vocational rehabilitation because he was not qualified. *Third*, defendant claims the court's error regarding this "expert" witness was prejudicial to defendant. Inasmuch as Dr. Dillman did not testify as an expert in vocational rehabilitation, these points are without merit.

Perhaps, Dr. Dillman's testimony in some vague way, or by inferences drawn, may have approached the subject of rehabilitation. Even if it did, his testimony was admissible. We do not know where "vocational evaluation and vocational prognostication" ends and "vocational rehabilitation" begins. No objection was made to the admission in evidence of any testimony of Dr. Dillman before, during or after his examination, cross-examination or redirect examination. "Failure to object to the admission of evidence constitutes a waiver of objection, and in such case the objection cannot be raised for the first time on appeal." *McCauley v. Ray*, 80 N.M. 171, 176, 453 P.2d 192 (1968). Even though the testimony should have been excluded, it is not considered to be erroneous where no proper objection is made. *Ash v. H. G. Reiter Company*, 78 N.M. 194, 429 P.2d 653 (1967). Justice and fairness require that the trial court be alerted by proper objections to the admission of evidence, and the specific rea-

sons therefor, so that the court can pass upon the objections advisedly and intelligently. *Alvarado M. & M. Co. v. Warnock*, 25 N.M. 694, 187 P. 542 (1919). It has been said, however, that "[I]t cannot be expected that every objection must state with particularity each and every element involved." *Hanberry v. Fitzgerald*, 72 N.M. 383, 391, 384 P.2d 256 (1963). Nevertheless, we do not believe that objections to Dr. Dillman's testimony would have assisted defendant in this appeal. We hold that the trial court did not abuse its discretion in determining that Dr. Dillman was qualified to testify as an expert witness, and in allowing his testimony on vocational evaluation and prognostication. In any event his testimony was admissible because no objection was tendered as to its admissibility.

B. *Refusal of defendant's requested instruction of impaired earning capacity was not erroneous.*

Defendant claims that the trial court erred in refusing to give its requested non-UJI Instruction No. 36. It reads:

The measure of damages for impairment of earning capacity is the difference between the amount which the plaintiff was capable of earning before his injury and that which he is capable of earning thereafter. As bearing on this question, it is proper to take into account not only the plaintiff's occupation at the time of the injury but also other occupations which he may pursue after injury.

The court instructed the jury in accordance with UJI 14.7. It reads:

The value of earnings lost and the present cash value of the earning capacity reasonably certain to be lost in the future.

Also given without objection was UJI 14.22. It reads:

If you have found that plaintiff is entitled to damages arising in the future, you must determine the amount of damages.

If these damages are of a continuing nature, you may consider how long they will continue. If they are permanent in nature you may consider how long plaintiff is likely to live.

As to loss of future earning ability, you may consider that some persons work all of their lives and others do not; that a person's earnings may remain the same or may increase or decrease in the future.

Our appellate courts have not yet discussed the issue of when UJI instructions on future damages should be used instead of non-UJI instructions. We do know that " * * * the UJI shall be used unless under the facts or circumstances of the particular case the published UJI is erroneous or otherwise improper, and the trial court so finds and states of record its reason." Rule 51(D) of the Rules of Civil Procedure.

Defendant argues that its requested instruction "was crucial" and should have been given.

Rule 51(D) alerts lawyers and district judges to the fact that the submission of non-UJI instructions to the jury can result in reversible error unless compliance therewith has occurred. See, *Williams v. Cobb*, 90 N.M. 638, 645, 567 P.2d 487 (Ct. App.1977), Sutin, J., specially concurring. Attorneys are allowed to request non-UJI instructions or modifications thereof, "where no applicable instruction *on the subject matter* is available." [Emphasis added.] *Mac Tyres, Inc. v. Vigil*, 92 N.M. 446, 449, 589 P.2d 1037 (1979). UJI 14.7 was available and covered the subject matter on that phase of damages.

The fact that defendant's requested instruction was "crucial" did not prejudice defendant. It was ably presented to the jury in final argument and adequately explained.

Oral argument was a substitute for the non-UJI instruction. The purpose for which UJI was introduced in New Mexico was to lessen, not increase, the use of instructions.

Refusal to give defendant's Requested Instruction No. 36 was proper. It was not erroneous.

C. *The judgment was not excessive.*

We are not impressed with defendant's argument concerning the amount of

the award as being excessive. If we believed the amount awarded were shocking, we would set forth all facts relevant to the issue of damages. This is unnecessary. From the evidence of damages suffered by reason of "pain and suffering" and "impaired earning capacity," the jury could have exceeded the amount awarded.

Cost of this appeal shall be paid by defendant.

Affirmed.

IT IS SO ORDERED.

HERNANDEZ, C. J., concurs.

WALTERS, J., dissents.

WALTERS, Judge (dissenting).

Witness Dillman, after stating his education and experience, was offered "as an expert in making evaluations as far as impaired lost earning capacity and related matters thereto [sic]." Defense counsel at that point stated to the court:

I do not have any objections to his qualifications as stated. I want to be clear that Dr. Dillman is not holding himself out as a vocational or rehabilitation expert.

To which counsel for plaintiff again said:

I have offered him as an expert in the area of giving expert opinions and evaluations of lost earning capacity or impaired earning capacity or earning capacity and related matters thereto.

Upon defendant's request to voir dire the witness, the entirety of the objection and the court's ruling referred to in the majority opinion was as follows:

Q. Dr. Dillman, you recognize that aside from the field of economics, that there is a recognized field of rehabilitation and vocational training?

A. I know that.

Q. You are not holding yourself out as an expert, as a vocational or rehabilitation expert?

A. That is not true. I have an expertise in personnel and vocational evaluation and vocational prognostication.

MR. MELENDRES: I have no objection to him testifying as to the economics and to the statistics as to impaired earning capacity but it is my understanding of his background and training, that he is not or has not been trained as a vocational expert in rehabilitation.

THE COURT: I will let the jury decide that particular fact issue. The witness will be deemed qualified to express opinions before this Court concerning the evaluation of impaired or lost earning capacity and related matters.

Thereafter, during Dillman's direct examination, he was asked if he had an opinion of plaintiff's present earning capacity. He responded:

I feel that it would be very unlikely, given the physical condition, the experience and training and given the type of jobs for which he would have to compete in a very competitive labor market, it would be very unlikely that John would be able to obtain and retain any type of substantial gainful employment. He would be lucky, but I think that situation is very unlikely, anyway not in this area.

\* \* \* \* \* \*

For all intents and purposes at this time he has a zero residual earning capacity.

\* \* \* \* \* \*

[B]ased on what the medical depositions have revealed and what I understand from John to be his functional limitations, especially strong in areas of standing and sitting and lifting and carrying and walking around, there is no question whatsoever that he is completely, 100 percent totally disabled for any type of heavy work, and because of the functional limitations for standing and sitting where he cannot do either one of them for very long periods of time, the type of job for which he would be suited would be those which he has an opportunity to be a master of his own time. He can sit for awhile and stand for awhile, he can walk around for awhile and maybe lie down to rest his back or stand with his back against the wall, which is one way to rest it. These jobs are just not overly

in abundance. There are some jobs, however, such as a dispatcher for a taxi cab company, where a person would have alot more leeway. There are few jobs like that, possibly somebody who worked in a parking lot, like out at the airport. These jobs, however, there are two major drawbacks. There are lots of people trying to get them, people who are not injured, and it is very, very difficult to get them, but assuming that he could get one, these jobs are essentially minimum wage type jobs. They pay approximately the federal minimum wage, from then the upward movement is only when the minimum wage gets changed and the minimum wage at the present time is $3.10 per hour. So I feel that the best that he could do would be a minimum wage type position, but I really think even that would be tough to get.

Defendant's expert witness Mackler, whose career as "a certified disability evaluator and vocational rehabilitation counselor" in public, private, and self-employment spanned 24 years at time of trial, was asked whether plaintiff was disabled from doing heavy work, and he replied:

That has been determined by the physicians. They have restricted him to light and sedentary type of work activities. He is incapable of doing heavy work.

Concerning the information obtained from physician's examinations of plaintiff, and its relationship to evaluating plaintiff's vocational rehabilitation potentials, the witness testified:

What I am concerned with the physician's function to determine what is known as residual functional capacity. What exactly can the individual do in terms of sitting, standing, walking, lifting, carrying, pushing, pulling; all of the physical activities that are normally associated with the work activity. Then, on the basis of that, I make a determination as to what jobs are appropriate that he can do. Now, based on the opinion of the medical doctors and this is unanimous, he is capable of a full range of sedentary light work if he is able to make positional changes.

\* \* \* \* \* \*

\* \* \* \* Sedentary work is the ability to sit, to sit for eight hours a day, to lift five pounds frequently with a maximum lift of ten pounds. That also means the ability to get up and move around and move files, carry ledgers, walk up and down stairs, or if an individual sits but is required to use hand and foot levers frequently, this is put into the light work range activity. Light work is the ability to stand or sit eight hours a day, and the ability to lift ten pounds frequently with a maximum lift of twenty pounds.

Q. Now, based upon your interviews with Mr. Malczewski, the testing that was done and your review of the medical information; do you have an opinion whether Mr. Malczewski is able to do light or sedentary type work?

A. That has been determined by the doctors. He is able to do it.

Mackler then outlined work he knew was available and for which plaintiff was qualified or could be trained to do "and stop being unhappy about not being able to do what he did in the past." Some of the jobs the rehabilitation expert described were electronic assembler, mechanical assembler, casting bench jobs, office machine repairman, dental lab technician, and small appliance repairman. The scale of wages for those jobs ranged from the lowest starting salary of $3.83 per hour to the maximum skill rate of $18,000 per year.

The definition of vocational rehabilitation given in the majority opinion as "methods to be used in retraining an injured person" is incomplete. That is only a portion of vocational rehabilitation; as witness Mackler testified, in order to know which "methods" will be used, the vocational rehabilitation expert intensively examines the subject's educational and vocational histories in detail; he observes how the injuries sustained affected the person's activities in his daily life; he consults with the subject's physicians and reviews the subject's medical histories; he conducts intelligence, manual dexterity, and achievement tests; in con-

cert with field psychologists, he does personality testing; he counsels with the individual to help him choose a new career; he arranges teaching programs for retraining the injured person; he encourages job training where the trainee will be able to gain confidence and regain his self-image and self-esteem; and he maintains a currency in knowledge of job requirements, job availabilities, and job pay scales. "Rehabilitation is the restoration of an individual to his greatest potential—physically, mentally, socially and vocationally." *Jones v. Grinnell Corp.*, 117 R.I. 44, 362 A.2d 139 (1976). It is more than merely a method of "retraining" an injured person. There was nothing in Dr. Dillman's catalogue of education or experience remotely touching any training or background in the rehabilitation field.

The record shows further that Dillman talked to the plaintiff once, gave him no tests, did not read or hear the evidence of plaintiff's treating physician or of a noted examining physician; he did not observe plaintiff's home situation, and he did not "go into other things that might be related to his [plaintiff's] work situation or abilities." Yet Dillman gave an evaluation of plaintiffs' physical and functional limitations, he assessed the degree of disability suffered by plaintiff, and he determined the kinds of jobs suitable for and available to plaintiff. To say, as the majority does, that Dillman did not testify in the field of rehabilitation is to ignore that part of his testimony.

I do not dispute that Dr. Dillman is, as Judge Sutin wrote in *Torres v. Sierra, supra*, a recognized expert in the field of economic statistics. I do not agree, however, that a witness qualifies himself as "a vocational or rehabilitation expert" by the bare assertion that "I have an expertise in personnel and vocational evaluation and vocational prognostication." This is indeed a far cry from the list of credits Judge Sutin considered necessary before a polygraphist's qualifications could be considered as established, in *State v. Alderete*, 86 N.M. 176, 521 P.2d 138 (Ct.App.1974). Even so, self-endowed expertise does not satisfy the requirement for foundational evidence of pro-

fessional, scientific or technical training, or sufficient practical experience, to prove a special knowledge in a particular subject or field of expertise not shared by persons in the ordinary walks of life. *See Lay v. Vip's Big Boy Restaurant, Inc.*, 89 N.M. 155, 548 P.2d 117 (Ct.App.1976) (meteorologist unable to testify as expert on stress caused by wind); *Sanders v. Smith*, 83 N.M. 706, 496 P.2d 1102 (Ct.App.1972) (non-lawyer incompetent to give opinion on legal standards); *State v. Padilla*, 66 N.M. 289, 347 P.2d 312 (1959) (no evidence of recognized qualifications by which to measure witness's "expertise").

The quoted portion of Dillman's testimony should not have been allowed; the judge, not the jury, should have determined whether there was a proper foundation for Dr. Dillman's "expert" opinion on plaintiffs' rehabilitation potential. *Winder v. Martinez*, 88 N.M. 622, 545 P.2d 88 (Ct.App. 1976).

Defendant objected, at the time Dillman was offered as an expert, to any testimony from him "as a vocational or rehabilitation expert." It was not necessary for defendant to object again when Dr. Dillman gave the objectionable testimony; the court had already ruled that the jury would "decide that particular fact issue [Dillman's rehabilitation expertise]." The law does not require a useless act. *Wells Fargo Bank v. Dax*, 93 N.M. 737, 605 P.2d 245 (Ct.App. 1979).

This case should be returned for a new trial because of error in allowing inadmissible "expert" evidence on the most crucial issue in the lawsuit. Dr. Dillman could testify on lost earning capacity based on a hypothetical prognosis or statement of plaintiff's physical, functional, mental, social and vocational rehabilitation; he was not qualified to make a prognosis or statement himself as a rehabilitation expert.

For the above reasons, I respectfully dissent.