[No. 3033. Nov. 10, 1926. Rehearing Denied
Dec. 1, 1926.]

STATE v. RILEY et al.

[251 Pac. 384.]

SYLLABUS BY THE COURT

1. There is substantial evidence in the record to support
the verdict, and under the uniform holding of this court
it will not be set aside.

2. It was not error to refuse an instruction that, al-
though the jury believed that the defendants committed
a burglary, yet they must also believe that the defendants
committed larceny in the dwelling so burglarized before
they could be convicted of the crime of larceny charged
in the indictment, the court having fully charged as to the
elements of the crime of larceny.

3. It was not error to strike the testimony of an im-
peaching witness, where the testimony was not the same
as was anticipated in the foundation for impeachment.

4. The admission of evidence cannot be challenged on
appeal for reasons not stated to the trial court at the time
the objection was made.

5. Where two or more crimes are committed, at or
about the same time, the whole transaction may be proven,
even though the tendency is to prove a crime other than the
one charged.

Appeal from District Court, De Baca County; Hatch,
Judge.

Birdy Riley and Ibb Howell were convicted of lar-
ceny, and they appeal. Affirmed.

Geo. W. Prichard, of Santa Fé, and T. M. Noble, of
Fort Sumner, for appellants.

John W. Armstrong, Atty. Gen., and James N. Bujac,
Asst. Atty. Gen., for the State.

OPINION OF THE COURT

BICKLEY, J. [1] Appellants Birdy Riley and Ibb
Howell were convicted of larceny of goods and chat-
tels belonging to J. L. Mayfield. Mr. Mayfield and his

[1] 16CJ p. 924 n. 36; 17CJ p. 255 n. 55; 36CJ p. 899 n.
34. [2] 16CJ p. 1063 n. 85. [3] 40Cyc p. 2740 n. 23. [4]
17CJ p. 70 n. 43. [5] 16CJ p. 574 n. 56.

wife, on Sunday afternoon at about 2:30 o'clock, left their dwelling house, situated about four miles from Duero in De Baca County. They, driving a Ford truck, had gone a short distance from home, when they saw the defendants traveling slowly on horseback off the road near the Mayfield house. The defendants apparently sighted the Mayfields, and all at once went into a fast gallop. At a point where the Mayfields could last see the defendants they were about 150 yards from the house and on a hill, and they stopped and watched the Mayfields as they (the Mayfields) continued on their way in the truck; then the defendants dropped out of sight over the hill. The Mayfields drove on to Duero, and returned to their home about 6 o'clock the same afternoon. Upon their return home they observed that a chain and lock which had been used to secure the door of the house were out of place, and the lock had been broken. Entering the house, they found that it had been ransacked, and clothing and other property to the value of about $350 had been stolen. The sheriff was notified, and the following day, with the assistance of several other men, he examined the premises. Horse tracks and human tracks were found in the dooryard. Some of the human tracks—boot tracks—led up to the door of the Mayfield dwelling house. There were the tracks of two horses. These tracks had certain peculiarities which rendered the trailing of the horses as they left the premises efficient. The sheriff and his assistants followed the horses' trail away from the Mayfield house, and about a quarter of a mile therefrom found a lariat rope. Following the trail further they came to a dugout, where the horsemen had dismounted. Apparently they did not stay there very long, but the tracks were visible. A number of human tracks were seen in the dugout and on top of it. They then followed the trail further. The sheriff saw the defendants the same day at defendant Howell's home. He talked with the two defendants. Riley said the horse he had ridden was on that place, and Howell said the one he had ridden was on Riley's place. The sheriff found the horse Riley had ridden. The tracks

made by this horse were the same as those made in the yard of the Mayfield house and at the dugout. The boot tracks **found near this horse's** tracks were the same size and formation as those found in the dooryard at the Mayfields and along the trail leading therefrom. The sheriff asked Howell where his catch rope (lariat) was, and Howell answered: "I haven't had one for a week." It thus appears that the identification of the defendants as being the persons seen by the Mayfields in the close proximity to their home is strongly corroborated. As against this, the defendants sought to establish an alibi by the testimony of the defendant Howell and other witnesses. One of these witnesses admitted that he had pleaded guilty to the commission of a crime, and was not sure whether it was a misdemeanor or a felony, and against another witness called to aid the alibi impeaching evidence was introduced. The defendant Howell said that he and Riley were looking for stock, but did not go nearer than four miles to the Mayfield place, and said that Riley had a rope, but he did not have any. It is suggested that the rope found along the trail heretofore described belonged to Howell, and that the circumstance of the finding of the rope, coupled with the statement that this defendant was out gathering stock without a lariat, and other circumstances connected therewith, was a circumstance impeaching the alibi. The alibi was weak. If the jury believed the testimony of the Mayfields as to defendants being at their home as corroborated by the evidence of the witnesses who tracked the horses leading to the defendants' whereabouts, they also had a right to take into consideration the discrediting attempt of the defendants to pollute the current of justice by a fabrication of evidence to establish a bogus alibi, if they believed that such fabrication was attempted. In 3 Encyc. of Evidence, "Circumstantial Evidence," page 146, note, it is said:

"The defense of alibi is one peculiarly susceptible to fabrication, and the fact that fraud has been resorted to to establish this defense, if clearly established, may properly tell with great force against the accused. The weight to

be attached to such a circumstance is to be decided by the jury in view of the other evidence in the case."

A great many decisions are cited in support of the foregoing statement. In the same volume the following statement is made at page 150:

"The attempt to account for suspicious circumstances by giving false explanations is a circumstance indicative of guilt."

The sheriff and other investigators who examined the Mayfield's premises circled the house carefully at two distances therefrom, and were unable to find any horse tracks other than those made by the horses apparently ridden by the defendants, and could find no tracks made by humans, except those heretofore described. The jury was given the usual cautionary instructions concerning circumstantial evidence, and was otherwise fully and properly instructed, and we are satisfied, after a careful consideration of the whole record, that there is substantial evidence to support the verdict.

[2] The appellants requested the following instruction:

"The court instructs the jury that, although you may believe from the evidence that the dwelling house of the ———— Mayfields was, on the 14th day of September, A. D. 1924, broken into with burglarious intent, and although you may believe from the evidence that the defendants are the persons who did the breaking of such dwelling house, yet such evidence is not sufficient to convict the defendants of the crime charged in the indictment; and I, therefore, charge you that before you can convict the defendants of the crime charged in the indictment you must find, from the evidence, beyond a reasonable doubt, that the defendants took, stole, and carried away the goods, chattels, property and clothing of the said Mayfields as charged."

The court refused this instruction as commenting on the weight of the testimony, and because the proposition sought to be covered by the tendered instruction is fully included by the court's general charge. We find that the court fully instructed the jury as to the elements of the charge of larceny, and there is nothing therein which would cause the jury to suppose that proof of the crime of burglary by the defendants was

conclusive proof of the crime of larceny charged in the indictment. Of course, if the jury believed from the evidence and beyond a reasonable doubt that the defendants committed a burglary in order to effect the larceny, this was an evidentiary fact, which they had a right to consider, as well as all other facts and circumstances connected with the affair. We see no error in refusing the instruction.

[3] Appellants propounded the following question to Mayfield, a witness for the state:

"I will ask you if you didn't tell Dick De Graftenreid on Thursday or Friday after Sunday the 14th, when your house was broken into, in the presence of the station agent at Buchanan, N. M., that, when you saw Howell when you left home going to Duero on Sunday the 14th of September, he was about 400 yards from where you were, or words of like import?"

—to which the witness answered:

"No, sir; I don't remember telling that."

Appellants, on rebuttal, attempted to impeach said witness Mayfield by introducing the testimony of Joseph De Graftenreid to the effect that Mayfield had stated to him, in substance, that he recognized defendants at a distance of from 200 to 400 yards. The witness Joseph De Graftenreid said on cross-examination he did not say 200 to 400 yards, but it was either one or the other. We agree with the trial court that the testimony of the witness Mayfield was not the same as developed by the impeaching question asked of the witness Joseph De Graftenreid, and hold that the court committed no error in striking the testimony of the said witness De Graftenreid.

[4] Appellants urge that the trial court erred in allowing the state's attorney to cross-examine Ibb Howell as to the fight he had with state's witness Lanehart in Buchanan after the indictment and arraignment, and while the defendants were out on bond, and a day or two before the trial. The only reason urged in support of this assignment of error is that such testimony introduced proof of another and distinct crime of

the defendant Howell, which had no connection with the crime for which he was on trial. The objection urged in the trial court was that the incident was not a proper subject of cross-examination. The admission of evidence cannot be challenged on appeal for reasons not stated in the trial court at the time the objection was made. See State v. Martin, 32 N. M. 48, 250 P. 842.

[5] The remaining assignment of error is that the court erred in permitting the crime of burglary to be proved, as it is not covered by the indictment. In this case the evidence was that the owners of a dwelling house left it locked, and on their return found the lock broken and a portion of the contents of the house taken away. The circumstances established indicated that the breaking of the lock and the taking of the property were parts of the same transaction.

"Where two or more crimes are committed, at or about the same time, the whole transaction may be proven, even though the tendency is to prove a crime other than the one charged." Territory v. Caldwell, 14 N. M. 535, 98 P. 167.

Finding no error in the record, the judgment of the trial court is affirmed, and it is so ordered.

PARKER, C. J., and WATSON, J., concur.