240 P.2d 213

**REID v. BROWN et al.**

**No. 5449.**

Supreme Court of New Mexico.

Jan. 25, 1952.

G. T. Watts, Roswell, for appellants.

G. T. Hanners, Lovington, for appellee.

COMPTON, Justice.

This is an appeal from a judgment, following the verdict of a jury, awarding damages for the unlawful killing of cattle. It is charged that the verdict is not supported by substantial evidence. It is also claimed that the court erred in the admission of certain evidence.

When a verdict is attacked as being unsupported, the power of the appellate court ends with a determination whether there is substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury; and, in

reviewing evidence on appeal, the court must view the evidence in the most favorable aspect, indulging in all reasonable inferences to be drawn therefrom, and disregarding all unfavorable testimony and inferences, to uphold the verdict. When more than one inference can be deduced from the facts, the reviewing court cannot substitute its deductions for those of the jury.

Applying the foregoing rules, we conclude that the verdict should be sustained. On November 30, 1948, appellant Lynn Brown executed and delivered a grazing lease covering two sections of land to appellee for a period of three years commencing January 1, 1949, and ending January 1, 1952. He continued to live on the land until December 29, 1948, then moved to Clovis. Appellants were married on December 28, 1948, and maintained their home in Clovis except for short intervals when they would return to the ranch and occupy a small house located thereon. On one occasion they remained on the ranch five weeks. Two or three days after their marriage, Lynn Brown conveyed the ranch, except 320 acres, to his wife. Subsequently, a heated controversy arose with respect to the terms of the lease, the Browns claiming that by reason of certain acts of appellee, the lease had become forfeited. So, on the early morning of December 12, 1949, they went to the home of appellee who lived on an adjoining ranch and made demands for possession and that appellee remove his cattle therefrom. The demands were made by Mrs. Brown, though Lynn Brown was present. Appellee explained to her that he had leased the place from Lynn Brown before their marriage and that they could not dispossess him. Thereupon, Mrs. Brown stated that unless the cattle were removed from the ranch by January 1, 1949, she would "kill every ——— ——— one of them."

At the time of the foregoing conversation, appellee had 22 head of cattle on the ranch. On the late afternoon of January 5, 1949, (Friday) he went to the ranch, putting out mineral salt, and counted the cattle. It was then noticed that a windmill on the premises was not pumping properly and on the following morning, he returned to repair it. After doing so, he again rode over the ranch to see the cattle. About a quarter of a mile from the mill, he first found a dead bull. A short distance farther he found several dead cows, most of them close together and all within a radius of a quarter of a mile. The incident was reported to the sheriff and an effort was made to determine the cause of death. Specimen from two cows were sent to a laboratory for analysis. The laboratory test was negative. An analysis of the water and salt likewise failed to disclose a clue as to the cause of death. There were no signs that the cattle had been shot, nor were there oth-

er signs of violence upon them. The cattle ranged in age from three to six years and were in fair physical condition. At the time, there had been no storms or lightning in the area. There is evidence that where cattle die from natural causes, they dig depressions in the ground, due to death struggle. There were no such signs present. Mrs. Brown first denied and then admitted that they had been at the ranch the night before the cattle were found dead the following morning.

The burden was upon appellee to prove by a preponderance of evidence that the appellants killed the cattle as charged, but this need not be done by direct evidence but may be shown by circumstantial evidence alone. Whether the circumstances are sufficient is in the first instance for the trier of the facts.

We are convinced that the facts and circumstances, when considered in the light of Mrs. Brown's assertion that she would kill the cattle, warrants a reasonable inference that the most probable cause of the death of the cattle was the result of appellants' acts. The most probable cause having been established, it was not incumbent upon appellee to exclude all possible causes. State v. Jones, 39 N.M. 395, 48 P.2d 403; Clower v. Grossman, 55 N.M. 546, 237 P.2d 353.

Furthermore, when counsel for appellants made an opening statement to the jury, it was asserted the evidence would show that appellants were not at the ranch when the cattle died, thereby suggesting an alibi as a defense. Mrs. Brown, being called as an adverse witness, testified as follows:

"Q. State your name? A. Mrs. Lynn Brown.

"Q. It is stated in the Complaint that the cattle of Henry Reid were found dead on the morning of January 7th, 1950, which would be on Saturday; did you and your husband spend Friday night at his house on this land? A. No, sir.

"Q. Did you spend any part of it? A. No, sir.

"Q. Did you stay at that house at all on Friday night? A. No, sir.

"Q. Did you tell Horace Owens, sheriff of Lea County that you and your husband had spent part or all of that Friday night at that house? A. No, sir."

The foregoing testimony was contradicted by the sheriff of Lea County. And, when Mrs. Brown was called as witness in her own behalf, she then testified that she and Lynn Brown had been at the ranch house and left some boxes some time after midnight Friday night, the 5th day of January, but that they were there for a short time only. Lynn Brown corroborated her testimony in this respect.

The alibi was very weak. If the jury believed that their testimony had been impeached, and this appears obvious since appellants themselves admit that they were at the ranch house the night of January 5th, they had a right to take into consideration the discrediting attempt of appellees to fabricate a bogus alibi, if they believed that fabrication was attempted. State v. Riley, 32 N.M. 83, 251 P. 384. At 3 Encyc. of Evidence, "Circumstantial Evidence," page 146, note, it is said: "The defense of alibi is one peculiarly susceptible to fabrication, and the fact that fraud has been resorted to to establish this defense, if clearly established, may properly tell with great force against the accused. The weight to be attached to such a circumstance is to be decided by the jury in view of the other evidence in the case."

Many decisions are cited in support of the text. In the same volume, page 150, the following statement is found: "The attempt to account for suspicious circumstances by giving false explanations is a circumstance indicative of guilt."

Objections were made to portions of the testimony of certain witnesses for the reason that no proper predicate had been shown as to their skill as experts. Appellee offered in evidence the testimony of three witnesses who had engaged in the cattle industry for many years and who testified that they had seen cattle die, both from natural and unnatural causes. Based upon this experience they were permitted to express an opinion that the cattle in question died from unnatural causes, however, each declined to give an opinion as to the cause of death. We see no error in the ruling. While it must appear that the witnesses have acquired sufficient knowledge or experience to testify, no rule can be laid down as to the extent of such knowledge. The testimony was based upon experience acquired over a long period of years and we think it was properly admitted. Whether a witness is shown to be qualified as an expert is a preliminary question for the court, the weight to be given the testimony is for the jury. Lynch v. Grayson, 5 N.M. 487, 25 P. 992, affirmed 163 U.S. 468, 16 S.Ct. 1064, 41 L.Ed. 230.

In the interesting case of Spring Company v. Edgar, 99 U.S. 645, 25 L.Ed. 487, a suit for damages for injuries inflicted on a party from an attack by a pet deer, a witness for the plaintiff, introduced as an expert, testified that he was a dentist; that he was to some extent acquainted with the habits and nature of deer, and had hunted them; that in his opinion the buck deer are not generally considered as dangerous, but that in the fall they are more dangerous than at other seasons. Another expert testified that he was a taxidermist, and had made natural history a study, and had read the standard authors in regard to the general characteristics of deer; that from his

reading he was of opinion that the male deer, after they had attained their growth and become matured, are dangerous; and that during the rutting season, from the middle of September to the middle of December, the buck deer are generally vicious. The defendant objected to all of the testimony of the experts, on the ground that the witnesses had not shown themselves competent as experts, and that it was improper, immaterial, and incompetent; but the court overruled the objection, and the defendant excepted. The supreme court, in sustaining the ruling, said: "Whether a witness is shown to be qualified or not as an expert is a preliminary question to be determined in the first place by the court; and the rule is, that if the court admits the testimony, then it is for the jury to decide whether any, and if any what, weight is to be given to the testimony. Cases arise where it is very much a matter of discretion with the court whether to receive or exclude the evidence; but the appellate court will not reverse in such a case, unless the ruling is manifestly erroneous."

The judgment will be affirmed and the cause remanded to the trial court to enter judgment against appellants and the sureties on their supersedeas bond, And It Is So Ordered.

LUJAN, C. J., and SADLER, McGHEE and COORS, JJ., concur.