625 P.2d 1192

**Cleon F. RICHARDS and Renee Richards, Plaintiffs-Appellants,**

v.

**The UPJOHN COMPANY, a Foreign Corporation, Defendant-Appellee.**

**No. 4064.**

Court of Appeals of New Mexico.

April 29, 1980.

Certiorari Denied May 22, 1980.

Bennett B. Traub and Mark P. Robinson, Cummins, White, Robinson & Robinson, and Richard C. Civerolo and Kathleen Lebeck, Civerolo, Hansen & Wolf, P. A., Albuquerque, for plaintiffs-appellants.

Ranne B. Miller and Kenneth R. Brandt, Miller, Stratvert, Torgerson & Brandt, Albuquerque, for defendant-appellee.

## OPINION

LOPEZ, Judge.

The court below granted summary judgment for Defendant drug company (Upjohn) in a suit arising out of the personal injuries suffered by Plaintiff Cleon Richards (hereafter "Plaintiff" or "Richards"), which allegedly resulted from medical treatment with the drug neomycin sulfate, manufactured by Upjohn. Richards and his wife sued on theories of breach of warranties, strict products liability, and negligent misrepresentation. We reverse.

Three issues are raised on appeal. 1. whether summary judgment was proper; 2. whether the affidavit of Dr. Hewitt, submitted by Plaintiff at the summary judgment hearing, should have been considered by the court; and 3. whether the Defendant should be required to reveal the volume of and income from its sales of neomycin sulfate as requested in Plaintiffs' interrogatory No. 82.

On October 17, 1973, Richards was admitted by Presbyterian Hospital in Albuquerque for surgical treatment of a gunshot wound in his left leg which was not healing properly. Dr. Weaver, in consultation with Dr. Boyd, performed surgery on the wound, after which he ordered the wound irrigated with an antibiotic solution of neomycin sulfate, Polymixin B, and Bacitracin. This was administered by a closed wound suction irrigation system during a three day period. Following this treatment, Plaintiff suffered a severe and permanent loss of hearing in both ears, which eventually resulted in the termination of his employment as an Air Traffic Flight Control Specialist with the Federal Aviation Authority. The neomycin sulfate used in the irrigation solution had been manufactured by Upjohn.

Upjohn had published warnings in the Physicians' Desk Reference (PDR) and in the package inserts of the neomycin sulfate it sold that the drug was ototoxic (toxic to the nerve controlling hearing) and nephrotoxic (toxic to the kidneys), and could cause deafness. The 1971 PDR indicated that the drug could be used topically, and stated that "[n]eomycin sulfate * * * may be used effectively as wet dressings, packs, or irrigations in secondarily infected wounds * *." The warning stated that "[i]n patients with impaired kidney function or with prerenal azotemia, systemic use of neomycin sulfate may result in irreversible deafness * * *." The literature also advised that certain precautions be taken when the drug was used repeatedly for irrigation of extensive wounds. The information was generally scattered among different paragraphs in small print on two pages of the PDR. During and after 1971, Upjohn withdrew its recommendations for any uses other than

intramuscular, apparently after the National Academy of Scientists-National Research Council and the Food and Drug Administration had determined the drug was probably not effective for topical use and/or as an irrigation solution for open wounds. The 1972 and 1973 PDR's indicated the drug was for intramuscular use only. Neomycin sulfate had been on the market, and used topically for many years prior to 1971. Doctors Weaver and Boyd, who were supervising Plaintiff's care, did not consult the current PDR or any other literature before ordering Plaintiff's treatment.

All other defendants in the suit except Upjohn, namely Doctors Weaver and Boyd, Presbyterian Hospital, and Albuquerque Orthopedic Associates, settled with Plaintiffs on the fifth day of trial, September 28, 1978. A mistrial was then declared by the court, and the matter was not submitted to the jury. Defendant Upjohn filed a motion for summary judgment, which was granted on February 19, 1979.

I. *Summary Judgment.*

Summary judgment is proper only if there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. N.M.R.Civ.P. 56(c), N.M.S.A.1978. Upjohn contends that as a matter of law its drug is not the cause of Plaintiff's deafness. In essence, it argues: 1) Richards offered no medical testimony that neomycin sulfate caused his deafness and so failed to establish that absorption of the drug was the actual cause of the deafness; 2) even if the drug caused the injury, no evidence was presented that the warnings contained in the PDR's and package inserts were inadequate; and 3) even if the warnings were inadequate, Dr. Weaver's decision to use the drug in an irrigation solution without first consulting the PDR was an independent intervening cause relieving Upjohn of liability.

■ Summary judgment is a drastic remedy to be used with great caution. *Pharmaseal Laboratories, Inc. v. Goffe*, 90 N.M. 753, 568 P.2d 589 (1977). The party oppos-

ing the motion for summary judgment is to be given the benefit of all reasonable doubts in determining whether a genuine issue of fact exists. *Goodman v. Brock*, 83 N.M. 789, 498 P.2d 676 (1972). All reasonable inferences must be construed in favor of the party opposing summary judgment. *Smith v. Klebanoff*, 84 N.M. 50, 499 P.2d 368 (Ct.App.), *cert. denied*, 84 N.M. 37, 499 P.2d 355 (1972). With these directives in mind, we consider the evidence before us.

*Actual cause.*

It is undisputed that neomycin sulfate can cause deafness. Upjohn has publicly acknowledged this fact in the information about the drug which it published in the PDR, in 1971, '72, and '73. The PDR's warn that significant amounts of the drug may be absorbed when used repeatedly for irrigation and that high blood levels increase the risk of ototoxicity. The deposition of medical expert Dr. Rosenbaum, contains testimony that the type of surgery performed on Richards, excision of a tract, exposes fresh muscle tissue and leads to rapid absorption of solutions applied to the area. Although evidence was presented to the contrary, Richards testified he had no problems with his hearing prior to November 1973. In support of this, he produced two audiograms taken at the request of his employer, one in August 1973, before surgery and one, in April 1974, after the operation. These audiograms show a dramatic loss of hearing in this period. Three of Richards' supervisors also indicated that they were unaware that Richards had any hearing problem prior to his surgery in the fall of 1973.

■ Causation may be established by circumstantial evidence. *Reid v. Brown*, 56 N.M. 65, 240 P.2d 213 (1952). In *Carter Farms Co. v. Hoffman-Laroche, Inc.*, 83 N.M. 383, 492 P.2d 1000 (Ct.App.1971), we held that the defendant drug company was not entitled to a directed verdict when there was circumstantial evidence that injection of a drug it manufactured caused the death of plaintiff's lambs which had been healthy before the injection. *Woods*

*v. Brumlop*, 71 N.M. 221, 377 P.2d 520 (1962), cited by Defendant as requiring expert medical testimony to establish causation, is not helpful to Defendant. That case is distinguishable on two grounds. 1) It alleged medical malpractice, not strict products liabilitiy.

[I]n a tort strict liability case * * * reasonable inferences from the circumstances may be drawn.

2 Frumer, Products Liability § 16A[A][e][ii] (1979).

2) There was no testimony other than that of the plaintiff herself in *Woods* that the treatment complained of could cause the type of injury she suffered. In the instant case, it is undisputed that neomycin sulfate can cause deafness. The circumstantial evidence produced by Plaintiff is sufficient to raise the issue of actual cause.

■ Proximate cause is a factual issue, unless all facts regarding causation are undisputed or, as a matter of law, there is an independent intervening cause. *Harless v. Ewing*, 80 N.M. 149, 452 P.2d 483 (Ct.App. 1969). Consequently, unless, as a matter of law, 1) Upjohn's warnings are adequate, or 2) Dr. Weaver's failure to consult the appropriate literature before prescribing the neomycin sulfate constitutes an independent intervening cause, a genuine issue of material fact concerning actual or proximate cause exists and that precludes summary judgment.

*Adequacy of warnings.*

■ Even if neomycin sulfate were the actual cause of Richards' deafness, Upjohn is not liable unless its warnings about the danger of the drug were inadequate. A drug manufacturer has a duty to warn the medical profession of the dangers of its drugs which it knew or should have known to exist. *Baker v. St. Agnes Hospital*, [1978–1979 Transfer Binder] Prod.Liab.Rep. (CCH) ¶ 8563 (N.Y. App. Div. Oct. 29, 1979); *Tinnerholm v. Parke Davis & Co.*, 285 F.Supp. 432 (S.D.N.Y. 1968); *see generally*, 72 C.J.S.Supp. Products Liability § 26(a) (1975). The manufacturer is liable to a patient who suffers injuries from a drug as

a result of the manufacturer's breach of its duty to warn the doctor of the dangers of the drug. *McEwen v. Ortho Pharmaceutical Corp.*, 270 Or. 375, 528 P.2d 522 (1974). The breach of the duty by a drug manufacturer to provide adequate warnings renders the drug unreasonably dangerous, and the drug is then a defective product for purposes of strict products liability. *First National Bank in Albuquerque v. Nor-Am Agricultural Products, Inc.*, 88 N.M. 74, 537 P.2d 682 (Ct.App.1975). *See*, Restatement (Second) of Torts § 402A, Comment h (1965). Five relevant standards concerning the adequacy of warnings about a dangerous drug are enumerated in *Nor-Am*: 1. the warning must adequately indicate the scope of the danger; 2. the warning must reasonably communicate the extent or seriousness of the harm that could result from misuse of the drug; 3. the physical aspects of the warning must be adequate to alert a reasonably prudent person to the danger; 4. a simple directive warning may be inadequate when it fails to indicate the consequences that might result from failure to follow it and, most importantly, in the context of the present case; 5. the means to convey the warning must be adequate. In other words, the drug manufacturer must bring the warning home to the doctor. *McEwen; see, Baker.* The drug company's duty is to use reasonable care to warn under all the circumstances. *Love v. Wolf*, 226 Cal.App.2d 378, 38 Cal.Rptr. 183 (1964). It must make reasonable efforts to warn. *Sterling Drug, Inc. v. Yarrow*, 408 F.2d 978 (8th Cir. 1969). What is reasonable in part depends upon the magnitude of the risk involved. Restatement *supra*, § 388, Comment n.

Although Upjohn's literature in the PDR's of 1971, '72, and '73 contained warnings concerning the use of neomycin sulfate, Richards has presented evidence that these warnings were inadequate. Neomycin sulfate had been on the market for over ten years before the recommendation to use it topically was withdrawn. There is evidence that the drug eventually was classified by the National Academy of Scientist-National Research Council and by the Food and Drug Administration as being probably not effective for topical use and/or as an irrigation solution applied to open wounds. There is also evidence that the warnings which were given by Upjohn were unclear, and that they did not effectively communicate to physicians the dangers from using the drug to irrigate wounds. In these circumstances, there is a genuine issue as to whether Upjohn's warnings were adequate.

It is improper for a court on summary judgment proceedings to decide that the warnings of a manufacturer of a drug that is dangerous if misused are adequate as a matter of law if evidence of inadequacy is presented. *Nor-Am; see, Michael v. Warner/Chilcott*, 91 N.M. 651, 579 P.2d 183 (Ct. App.), *cert. denied sub nom. Robbins v. Michael*, 91 N.M. 610, 577 P.2d 1256 (1978). The adequacy of the warnings is a question of fact to be determined by a jury. *Nor-Am.* Unless, as a matter of law, the acts of Doctors Weaver and Boyd in failing to consult the current PDR and in using the drug in a manner no longer recommended by Upjohn constitute an independent intervening cause, summary judgment should not have been granted.

*Independent intervening cause.*

The definition of an independent intervening cause is set out in *Thompson v. Anderman*, 59 N.M. 400, 411–12, 285 P.2d 507, 514 (1955) where the New Mexico Supreme Court wrote:

> The independent intervening cause that will prevent a recovery of the act or omission of a wrongdoer must be a cause which interrupts the natural sequence of events, turns aside their cause, prevents the natural and probable results of the original act or omission, and produces a different result, *that could not have been reasonably foreseen.* (Emphasis added.)

A doctor's negligence is not, as a matter of law, an intervening cause exonerating the drug company, if the doctor's act is reasonably foreseeable. *Stevens v. Parke, Davis & Co.*, 9 Cal.3d 51, 507 P.2d 653, 107 Cal.Rptr. 45 (1973). The issue,

then is whether Dr. Weaver's use of neomycin sulfate in an irrigation solution was reasonably foreseeable. Richards presented evidence that it was. The 1971 PDR indicated the drug could be used topically in irrigating wounds. While the recommendation for topical use was withdrawn in two of the 1971 PDR supplements, there is no doubt that, at one time not too distant from the incident in this suit, Upjohn recommended its product to physicians as being effective for the very use to which Dr. Weaver put it. The deposition of Dr. Lawrence, a former employee of Upjohn, stated that the continued use by physicians after 1971 of neomycin sulfate as an irrigating solution was forseeable and foreseen, by Upjohn. The issue of foreseeability, and thus the question of whether the doctor's use of the drug constituted an independent intervening cause, should go to the jury. *Id.* In *Bristol-Myers Co. v. Gonzales*, 548 S.W.2d 416 (Tex.Civ.App.1976), *rev'd on other grounds*, 561 S.W.2d 801 (1978), where the plaintiff also became deaf after a wound was irrigated with a solution containing neomycin sulfate the court said that there was sufficient evidence that the drug company's failure (in this case Bristol-Meyer's, not Upjohn's) to warn adequately was the cause of plaintiff's injury. The treating physician had testified he didn't know that continuous irrigation was an improper use and he believed absorption was minimal from irrigation. In the instant case, it is clear from reading Dr. Weaver's deposition that he did not know that continuous irrigation was an improper use; and Dr. Boyd revealed his belief that absorption was minimal when he gave that as the reason that neomycin sulfate could not have been the cause of Richards' deafness.

Upjohn argues that the negligence of Doctors Weaver and Boyd in failing to read the most recent PDRs concerning neomycin sulfate insulates Upjohn from liability. Although some courts have held that the inadequacy of a drug company's warnings cannot be the proximate cause of the patient's injury when the physician failed to consult the literature or observe the warnings concerning the drug he used, [*Oppenheimer v. Sterling Drug, Inc.*, 7 Ohio App.2d 103, 219 N.E.2d 54 (1964); *Douglas v. Bussabarger*, 73 Wash.2d 476, 438 P.2d 829 (1968)], the better reasoned cases do not reach this result. *Stevens; Baker; McEwen; Bristol-Meyers; Sterling Drug.* A reasonable person need not conclude from the fact that a doctor was unaware of the drug company's warnings that, if the company had chosen to employ other more effective means to communicate the warnings, the doctor still would have remained unaware of the dangers. *Baker; see, McEwen.*

The issue, is still the foreseeability of the doctors' actions. If it was foreseeable that doctors might not consult the PDR or package inserts before using neomycin sulfate in an irrigating solution, a doctor's failure to do so does not constitute an independent intervening cause relieving a drug company, whose warnings were inadequate, from liability. This is consistent with the Restatement, *supra* § 449 which reads:

> If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby.

Dr. Weaver testified that it is not standard practice in the medical profession to re-read the PDR every time a drug is given, particularly for drugs which have been on the market for a long period of time. The evidence shows neomycin sulfate had been used by physicians for over ten years before this incident.

Defendant cites *Mulder v. Parke Davis & Co.*, 288 Minn. 332, 181 N.W.2d 882 (1970) for the proposition that a drug company is not liable for failure to communicate a warning if the doctor is fully aware of the facts which are the subject of the warning. The case is not apposite, however. There the physician testified he was aware of the dangers of the drug and of the dosage recommended by the drug company, but simply chose not to be governed by that

information. In the case before us, the testimonies of both Doctors Weaver and Boyd indicate that they were *not* aware of the dangers associated with the topical use of neomycin sulfate or that such usage was no longer recommended. The extent of their knowledge should be determined by a jury, as it is a factual question.

There is evidence that Doctor Weaver's failure to consult the PDR and the resulting misuse of the drug was foreseeable. This evidence precluded summary judgment. The court should not have decided, as apparently it did, that, as a matter of law, Dr. Weaver's misuse of the drug was an independent intervening cause.

## II. *The late affidavit.*

■■■■ Having already decided that summary judgment was improper, we need not discuss the court's failure to admit the affidavit of Dr. Hewitt in opposition to the motion for summary judgment, which was submitted at the hearing on that motion. However, we believe it helpful to the lower courts if we briefly discuss this issue. We reiterate our position in *Cordova v. City of Albuquerque*, 86 N.M. 697, 526 P.2d 1290 (Ct.App.1974) that the courts do have discretion to allow the filing of late affidavits under N.M.R.Civ.P. 6(d), N.M.S.A.1978. This is particularly true in summary judgment proceedings, since it is important for the court to consider as much information as possible before concluding that there are no material facts in dispute. *See, Pharmaseal Laboratories.* If the court does not have sufficient factual information before it on which to reasonably base a judgment, it cannot grant summary judgment. *Toulouse v. Armendariz*, 74 N.M. 507, 395 P.2d 231 (1964). Consequently, an affidavit submitted the day of the summary judgment hearing should be allowed, unless the other party needs time to rebut the information contained in the affidavit, and there is some reason that the hearing cannot be postponed.

## III. *Interrogatory 82.*

■■■■ As with the affidavit, we need not discuss this issue, but we choose to do so to avoid future litigation. Plaintiffs' interrogatory 82 requested information from Defendant concerning the volume and dollar amount of its sales of neomycin sulfate (sold under Upjohn's tradename of Mycifradin Sulfate). Upjohn objected to the interrogatory, and the court sustained the objection. According to N.M.R.Civ.P. 33, N.M.S.A.1978, interrogatories may relate to any matters which can be inquired into under Rule 26(b). N.M.R.Civ.P. 26(b), N.M.S.A. 1978, states:

> [T]he deponent may be examined regarding *any matter, not privileged, which is relevant* to the subject matter involved in the pending action * * * * It is not ground for objection that the testimony will be inadmissible at the trial, if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence. [Emphasis added.]

The information sought was relevant to Plaintiff's case and it was not privileged information. It was relevant to show that the drug was being sold in containers too large for intramuscular use which was the only use recommended by Upjohn in 1973 at the time of Plaintiff's injury, and that, consequently, Upjohn knew or should have known that physicians were still using the drug topically and/or in irrigation solutions such as the one used on Plaintiff. The information sought was not privileged. Ordinarily, financial information is not privileged, nor is it a trade secret. *See, Caldwell-Clements, Inc. v. McGraw-Hill Publishing Co.*, 12 F.R.D. 531 (S.D.N.Y., 1952); *see, generally, Love.* Rule 26(b) is a liberal discovery rule. *Fort v. Neal*, 79 N.M. 479, 444 P.2d 990 (1968). Failure to allow discovery of information which the rule permits to be discovered is an abuse of discretion.

The judgment of the lower court is reversed, and the cause is remanded for proceedings consistent with this opinion.

IT IS SO ORDERED.

SUTIN and ANDREWS, JJ., specially concur.

SUTIN, Judge (specially concurring).

I specially concur.

To grant summary judgment under the facts and circumstances of this case, extensive and circumfluent in scope and description, is a sad reflection of the judicial process. To my knowledge, summary judgment has never been upheld in a case of such complexity. This is a matter of common knowledge. During extensive oral arguments by competent attorneys, the court said with reference to summary judgments:

Why not eliminate the whole rule. Every time I grant one, I get reversed.

Despite the fact that we have repeatedly said that summary judgment is a drastic remedy, district courts, for unknown reasons, at the conclusion of excellent oral arguments, say:

I'm going to grant the motion. Thank you.

District Judges and lawyers constantly avoid the rules set forth in *Goodman v. Brock*, 83 N.M. 789, 498 P.2d 676 (1972). *Goodman* is never mentioned in oral argument and oral argument never follows the rules. (1) The burden is on defendant to make a prima facie showing that it is entitled to summary judgment; i. e., such evidence as is sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted. (2) If done, the burden then shifts to plaintiff to show there was a genuine issue of material fact. We no longer speak in terms of the "slightest doubt" as to the facts to deny summary judgment. Summary judgment should be denied if there are "reasonable doubts" in the court's mind. Plaintiff is to be given the benefit of all reasonable doubts in determining whether a genuine issue of material fact exists. A substantial dispute as to a material fact forecloses summary judgment.

*Goodman* said:

Unquestionably the burden was defendants to show an absence of a genuine issue of fact, *or that they were entitled as a matter of law for some other reason* to a summary judgment in their favor.

[Emphasis added.] [Id. 792, 498 P.2d 676.]

Plaintiffs mistakenly argued that defendant failed to establish an independent intervening cause as a matter of law. This was not defendant's position.

Defendant argued at the motion for summary judgment that plaintiffs' claims boiled down to whether defendant failed to adequately warn prescribing physicians and failed to furnish prescribing information to physicians relating to the use of Neomycin, a drug; that based upon the testimony of Dr. Weaver at trial, the warning in effect at the time that Dr. Weaver used the drugs, and the indication for use, were adequate; that the actual language of the warning is immaterial because Dr. Weaver didn't read it, didn't rely upon it, and didn't refer to it in any way in his decision to prescribe the drug.

If I understand defendant's position correctly, the negligence of defendant, if any, by way of its warning, was not the proximate cause of plaintiff's injuries.

From the oral argument and the judgment entered in favor of defendant, summary judgment was granted because there was no genuine issue of material fact, nor "as a matter of law for some other reason," to-wit: an independent intervening cause.

Defendant answered in denial with the following pertinent affirmative defenses stated briefly:

(1) plaintiff's injuries resulted from an independent intervening cause, and

(2) the negligence of other persons.

Defendant did not seek summary judgment on its affirmative defense that the conduct of Dr. Weaver was an independent intervening cause.

The first point in defendant's Answer Brief is:

*DEFENDANT AT NO TIME ARGUED THAT IT WAS INSULATED FROM LIABILITY BY AN INDEPENDENT INTERVENING CAUSE.* [Emphasis added.]

At the end of a long "Introduction" the defendant said:

\* \* \* Defendant Upjohn moved for summary judgment on the grounds that there was no genuine issues of fact as to the cause of the injury, *as to the adequacy of the warnings and as to its position* that the adequacy or inadequacy of the warnings and precautions \* \* \* had no effect on the decision to prescribe neomycin \* \*. [Emphasis added.]

I read plaintiffs' second amended complaint free from any such claims expressed by defendant. Plaintiffs charged:

\* \* \* Defendants knew or should have known that said drugs would very likely be prescribed by physicians \* \* \* to patients such as Plaintiff without inspection for defects in same.

\* \* \* \* \* \*

Defendants \* \* \* expressly and impliedly, warranted to Plaintiff that the neomycin sulfate and Ploymixin B supplied for the use of Plaintiff as above-stated were free of contamination, were safe and were reasonably fit for the intended purpose for which they were used.

\* \* \* \* \* \*

We have not been advised by the court of the basis upon which summary judgment was granted. Defendant's motion for summary judgment stated that "there is here present no genuine issue of material fact" or in the alternative, "to enter partial summary judgment as to each of the claims asserted." The court found "that there remains no genuine issue of material fact" and entered summary judgment.

The question for decision is:

Was there no genuine issue as to any material fact within the theory of plaintiffs' claim?

In a discussion of "The Law Governing Summary Judgment," defendant said:

[A] motion for summary judgment *requires that the Court go beyond the allegations of the pleadings* to determine whether a claim can in reality be supported on the grounds alleged and *whether a material factual controversy exists as to those allegations.* *Pederson v.*

*Lothman,* 63 N.M. 364, 320 P.2d 378, 1958. [Emphasis added.]

*Pederson* said this:

\* \* \* It must be borne in mind that a summary judgment amounts to more than a motion to dismiss for failure to state a claim upon which relief may be granted; it is by its own terms a judgment. The court goes beyond the allegations of the complaint and *determines whether a claim can in reality be supported on the grounds alleged, and whether a controversy as to an issue of fact exists as to the 'statements of the complaint.* [Emphasis added.] [Id. 369, 320 P.2d 378.]

Defendant has misinterpreted *Pederson.* What the court said was that if the defendant produces by way of deposition or affidavits that the allegations of the complaint are overcome by facts, plaintiff cannot stubbornly rely upon the allegations of the complaint to create an issue of fact. The plaintiff must show that evidence is available which would justify a trial on the issue alleged. The "bare contention" of the complaint is not a showing of "evidence available." Under these circumstances, a plaintiff does not raise a factual issue on the allegations made. *Rekart v. Safeway Stores, Inc.,* 81 N.M. 491, 468 P.2d 892 (Ct. App.1970).

So, in the instant case, where plaintiff claims defendant knew or should have known that physicians would prescribe the drugs to patients without an inspection for defects and defendant expressly and impliedly warranted to plaintiff that the drugs were safe, these are the material issues of fact. Defendant cannot leave the theory of liability stated and wander into questions of warnings given, especially so, when the doctor has not read the warnings.

Defendant did not make a prima facie showing as required under the *Goodman* rule.

Summary judgment, as practiced in the district courts, has become an escape route instead of a remedy. To make it a remedy, Rule 56 of the Rules of Civil Procedure entitled "Summary Judgment" must be amended or expanded to state:

(1) That the motion must state specifically the material fact or facts upon which there is no genuine issue as a basis upon which summary judgment is sought.

(2) A hearing shall be held upon this fact or facts raised.

(3) The district court must make findings or explicitly state the reasons why summary judgment was granted or denied.

Otherwise, the purpose of the rule will be defeated. Its purpose is to hasten the administration of justice, expedite litigation by avoiding needless trials and to enable one to obtain judgment promptly by preventing frivolous defenses for purpose of delay. *Agnew v. Libby*, 53 N.M. 56, 201 P.2d 775 (1949). Since 1949, we have been flooded with erroneous summary judgments that have delayed trials, and perhaps, increased the cost and expenses, changed the status of parties, caused the loss of witnesses and destroyed the fabric woven around the Rules of Procedure to grant the parties a fair trial.

*In 1913, sixty-seven years ago*, before the faculty and students of Yale University, the Honorable John W. Goff said:

To-day our profession is almost a storm center, and I include in our profession the judiciary and the bar. In the popular arena of discussion grave questions have arisen which to many appear revolutionary and which, if carried into popular action by law, would certainly be revolutionary according to our system * * *.

\* \* \* \* \* \*

The delay of the law particularly in the administration of justice has evoked from the President of the United States language so scathing that it would be difficult in polite words to excel it in intensity.

Goff, "The Lawyer," 22 Yale L.J. 433 (1913).

"Polite words" cannot describe the inexcusable delay in litigation today. The adoption of the Rules of Procedure was to be the forerunner of the solution to this urgent situation. Summary judgment has not played its part.

ANDREWS, Judge (specially concurring).

I specially concur.

I agree with Judge Lopez that the summary judgment granted in this case should be reversed, but I do not agree with his identification of the issues to be dealt with on remand.

In my view, *Oppenheimer v. Sterling Drug, Inc.*, 7 Ohio App.2d 103, 219 N.E.2d 54 (1964), and *Douglas v. Bussabarger*, 73 Wash.2d 476, 438 P.2d 829 (1968), are correct; there can be no question of negligence on the part of a drug company for failure to warn of dangerous side effects where the company has supplied the plaintiff's physician with adequate warning but the physician has failed to consult the available literature. In such a case, the physician is an independent intervening cause as a matter of law, and the behavior of the drug company cannot be the proximate cause of any injury suffered by the patient.

However, it appears that there is a substantial question as to whether the warning which was published by Upjohn in the Physician's Desk Reference was sufficient to apprise the doctors of the danger of using the drug in the way they did. If the warning in the PDR was inadequate, the doctors' failure to consult the PDR could not have been an intervening cause of the injury.

Thus, I would limit the basis on which the issue of independent intervening cause is presented to the jury; they should be instructed that they must find Upjohn not liable if they determine that the warning placed by Upjohn in the PDR was adequate. If the warning is found to have been inadequate, the jury must further determine that the administration of neomycin sulfate was the actual cause of plaintiff's injury before Upjohn may be held liable.